IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS




**FILED**

April 08, 2020

TAMARA CHARLES
CLERK OF THE COURT

ICIAL PUBLICATION

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| HESS OIL VIRGIN ISLANDS CORPORATION, ) | CASE NO. SX-05-CV-165 |
| ) | |
| Plaintiff, ) | COMPLEX LITIGATION DIVISION |
| ) | |
| v. ) | |
| ) | |
| FLUOR DANIEL, individually and as successor-in- ) | |
| interest to FLUOR ENGINEERS AND CONSTRUCTORS, ) | |
| INC.; FLUOR ENGINEERS AND CONSTRUCTORS, INC.; ) | |
| FLOUR CORPORATION; TUTHILL CORPORATION, ) | |
| individually and as successor-in-interest to COPPUS ) | |
| MURRAY GROUP and/or COPPUS TURBINES; ) | |
| ALLTITE GASKET COMPANY; JOHN CRANE f/k/a ) | |
| CRANE PACKING COMPANY; RUBBER AND GASKET ) | |
| COMPANY OF P.R.; AUSTIN INDUSTRIAL, INC. f/k/a ) | |
| TECHNICAL MAINTENANCE, INC., AUSTIN TMI, INC. ) | |
| and/or AUSTIN INDUSTRIES; KELLOGG BROWN & ) | |
| ROOT, a Halliburton Company, individually and as ) | |
| successor-in-interest to BROWN & ROOT OVERSEAS, ) | |
| INC.; CBI SERVICES, INC.; INSTRUMENTATION & ) | |
| ELECTRICAL SYSTEMS SERVICES, BORN INC. f/k/a ) | |
| BORN ENGINEERING COMPANY; SAINT-GOBAIN ) | |
| ADVANCED CERAMICS, as successor-in-interest to ) | |
| CARBORUNDUM CORPORATION; CONTROL ) | |
| ASSOCIATES; THE DARCOID COMPANY, INC. a/k/a ) | |
| DARCOID RUBBER COMPANY; GERARD PACKING & ) | |
| BELTING CORPORATION: INSULATION ) | |
| DISTRIBUTORS CORPORATION: ISLAND SUPPLY ) | |
| COMPANY; RESAL, INCORPORATED; PARSONS ) | |
| INFRASTRUCTURE & TECHNOLOGY GROUP, as ) | |
| successor-in-interest to THE RALPH M. PARSONS ) | |
| COMPANY; STERLING PACKING & GASKET DIVISION; ) | |
| STANDCO INDUSTRIES, INC.; STRAHMAN VALVES, ) | |
| INC.: CON-RAD, a division of U.S. INDUSTRIES; P.H. ) | |
| SALES INCORPORATED a/k/a P.H. SALES COMPANY; ) | |
| JOHN ZINK COMPANY a/k/a JOHN ZINK COMPANY ) | |
| LLC, ZINCLAHOMA, INC.; 3M a/k/a MINNESOTA ) | |
| MINING & MANUFACTURING COMPANY; 3M PUERTO ) | |
| RICO, INC.; VIACOM, INC. f/k/a WESTINGHOUSE ) | |
| ELECTRIC CORPORATION; UNIVERSAL OIL ) | |
| PRODUCTS a/k/a UOP; CDI CORPORATION, as ) | |
| successor-in-interest to CDI ENGINEERING ) | |
| SOLUTIONS; CDI ENGINEERING GROUP; CDI ) | |

ENGINEERING, INC., CDI STUBBS OVERBECK; )
STUBBS OVERBECK & ASSOCIATES, INC.; CDI )
ENGINEERING SOLUTIONS, as successor-in-interest )
to CDI ENGINEERING GROUP; CDI ENGINEERING, )
INC.; CDI STUBBS OVERBECK; STUBBS OVERBECK & )
ASSOCIATES, INC.; CDI ENGINEERING GROUP, as )
successor-in-interest to CDI ENGINEERING, INC.; CDI )
STUBBS OVERBECK; STUBBS OVERBECK & )
ASSOCIATES, INC.; BROWN FINTUBE COMPANY; )
KOCH ENGINEERING CO., as successor-in-interest to )
BROWN FINTUBE COMPANY; OHMSTEDE MACHINE )
WORKS, a/k/a OHMSTEDE, INC.; BROS )
INCORPORATED, a division of AMERICAN HOIST )
AND DERRICK; CERTAINTEED PRODUCTS )
CORPORATION; ELLIOTT COMPANY, a division of )
CARRIER; FOSTER WHEELER CORPORATION, )
individually and as successor-in-interest to FORTY- )
EIGHT INSULATIONS, INC.; GARLOCK, INC.; )
LOCKHEED MARTIN CORPORATION, individually )
and as successor-in-interest to MARTIN MARIETTA )
CORPORATION, MARTIN MARIETTA ALUMINUM, )
INC. and MARTIN MARIETTA ALUMINUM )
PROPERTIES, INC.; MARTIN MARIETTA )
CORPORATION, individually and as successor-in- )
interest to MARTIN MARIETTA ALUMINUM, INC. and )
MARTIN MARIETTA ALUMINUM PROPERTIES, INC., )
MARTIN MARIETTA MATERIALS, INC., individually )
and as successor-in-interest to MARTIN MARIETTA )
CORPORATION, MARTIN MARIETTA ALUMINUM, )
INC. and MARTIN MARIETTA ALUMINUM )
PROPERTIES, INC.; PACIFIC VALVES; RARITAN )
SUPPLY COMPANY, individually and as successor-in- )
interest to BRIDGE SUPPLY COMPANY: UNION PUMP )
COMPANY; ST. CROIX COMPRESSION AND )
ROTATING EQUIPMENT SERVICES; JOHN DOES/JANE )
DOES ET ALS, and/or JOHN DOE INC., ET ALS, )
)
Defendants. )
)

Cite as: 2020 VI Super 50

**Appearances:**

**CARL A. BECKSTEDT, III, ESQ.**
Beckstedt & Associates
Christiansted, VI 00820
*For Hess Oil Virgin Islands Corporation*

**JOHN H. BENHAM, ESQ.**
Law Office of John H. Benham, P.C.
St. Thomas, VI 00801
*For Fluor Daniel, Fluor Engineers & Constructors, Fluor Corporation, Gerard Packing & Belting
Corporation, Amdura Corporation, and Standco Industries, Inc.*

**W. MARK WILCZYNSKI, ESQ.**
Law Office of W. Mark Wilczynski, P.C.
St. Thomas, VI 00804
*For John Crane f/k/a Crane Packing Company*

**JAMES L. HYMES, III, ESQ.**
Law Office of James L. Hymes, P.C.
St. Thomas, VI 00802
*For Saint-Gobain Advanced Ceramics, Viacom, Inc. f/k/a Westinghouse Electric Corporation, and
Foster Wheeler Corporation*

**MICHAEL J. SANFORD, ESQ.**
**RYAN C. STUTZMAN, ESQ.**
Sanford, Amerling & Associates
Christiansted, VI 00820
*For Virgin Islands Industrial Maintenance Corporation, Riggers & Erectors International, Inc., Union
Pump, Inc., Resal, Inc., Garlock, Inc., Austin Industrial, Inc. f/k/a Technical Maintenance, Inc., Austin
TMI, Inc. and/or Austin Industries, and P.H. Sales, Inc.*

**MARK D. HODGE, ESQ.**
Hodge & Hodge
St. Thomas, VI 00802
*For CBI Services, Inc. and Parsons Infrastructure & Technology Group, Inc.*

**BERNARD C. PATTIE, ESQ.**
Law Offices of Bernard C. Pattie, P.C.
Christiansted, VI 00820
*For CDI Corporation, CDI Engineering Group, CDI Engineering, Inc., CDI Stubbs Overbeck, Stubbs
Overbeck & Associates, Inc.; CDI Engineering Solutions, Stubbs Overbeck & Associates, Inc.*

**RICHARD H. HUNTER, ESQ.**
Hunter & Cole
Christiansted, VI 00820
*For Raritan Supply Company, Tuthill Corporation, Born Inc., Universal Oil Products, Elliott Company, Strahman Valves, Inc., and CertainTeed Products Corporation*

**SIMONE R.D. FRANCIS, ESQ.**
**SOFIA L. MITCHELL, ESQ.**
Ogletree, Deakins, Nash, Smoak & Stewart, LLC
St. Thomas. VI 00802
*For Lockheed Martin Corporation, Martin Marietta Corporation, 3M, and 3M Puerto Rico, Inc.*

**EUGENIO W.A. GÉIGEL-SIMOUNET, ESQ.**
GS Law Offices P.C.
Gallows Bay, VI 00824
*For Rubber & Gasket Co. of Puerto Rico, Inc.*

**DOUGLAS L. CAPDEVILLE, ESQ.**
**ALISHA UDHWANI, ESQ.**
Law Offices of Douglas Capdeville, P.C.
Christiansted, VI 00822
*For Alltite Gasket Company*

**ANDREW C. SIMPSON, ESQ.**
Law Offices of Andrew C. Simpson, P.C.
Christiansted, VI 00822
*For John Zink Company, Zinclahoma, Inc., Brown Fintube Company, and Koch Engineering Company*

## MEMORANDUM OPINION

**MOLLOY,** *Judge.*

¶1 **BEFORE THE COURT** are several motions to dismiss for failure to state a claim for relief, for lack of subject-matter jurisdiction, and for summary judgment. Plaintiff Hess Oil Virgin Islands Corporation ("HOVIC") commenced this action for contribution, indemnification, and breach of contract to recoup monies paid to settle asbestos-related claims asserted by 149 individuals in the District Court of the Virgin Islands ("District Court") between 1997 and 2001. HOVIC attached a list of the District Court Plaintiffs and their respective case numbers to its complaint. The Judicial Panel on Multidistrict Litigation ("JPML") eventually transferred the District Court cases to the United States District Court for the Eastern District of Pennsylvania ("Eastern District") for coordination under *In re: Asbestos Products Liability Litigation (No. VI)*, MDL No. 875. One defendant moved to

dismiss for lack of subject matter jurisdiction claiming the Superior Court lacks jurisdiction over contribution and indemnification claims arising out of the District Court cases. Other Defendants moved to dismiss because HOVIC was not named as a defendant in the District Court cases. HOVIC cannot seek indemnification or contribution, they assert, because HOVIC was never sued by the District Court Plaintiffs. Any monies paid out were gratuitous. HOVIC counters that its parent company, Amerada Hess Corporation ("Hess"), who was sued in the District Court cases, is the real party in interest in this case, and assigned its rights to HOVIC to seek contribution and indemnification and to sue for breach of contract. HOVIC's complaint does not make that allegation, however. And HOVIC also contradicts itself, claiming that it, too, is a real party in interest here. Lastly, HOVIC asserts six claims in its complaint: contribution, contractual and common law indemnification, and breach of contract. But each count concerns the claims asserted by the 149 District Court Plaintiffs. So, HOVIC actually asserts 149 claims for contribution, 149 claims for common law indemnification, and 149 claims for contractual indemnification—in addition to its breach of contract claims. Since every defendant is named on each claim, the actual number of claims HOVIC must prove against every Defendant total over 60,000.

¶2 For the reasons stated below, this Court holds that joining multiple claims within the same count in a complaint is improper and constitutes misjoinder. *Accord* V.I. R. Civ. P. 8(a)(2) (requiring "separate designation of counts and defenses for *each claim* identified in the pleading."). Therefore, the Court must sever HOVIC's claims. The claims asserted in this case will be limited to Oliver Abraham, the first-named plaintiff on the list HOVIC attached to its complaint. One-hundred and forty-eight severed complaints must be refiled: one for each of the remaining District Court Plaintiffs. Notwithstanding the misjoinder, the Court will deny all motions insofar as they concern Hess' assignment of rights to HOVIC, grant the motions to dismiss the failure to obtain insurance claim based on the statute of limitations but stay the dismissal pending certification of a question of law to the Supreme Court of the Virgin Islands, strike an untimely motion for summary judgment, and grant a motion to dismiss contribution and indemnification claims. All other motions will be denied without prejudice, with leave to refile once the severed complaints have been filed.

## I.     BACKGROUND

### A. *Federal Asbestos Tort Claims: Andrew, et al. v. Amerada Hess Corp., et al.*

¶3     Between 1997 and 2001, sixteen lawsuits were filed in District Court by individuals seeking damages for exposure to asbestos. The first two lawsuits were filed on July 1, 1997.[1] Two more were filed on October 22, 1997.[2] The fifth lawsuit was filed on February 2, 1998.[3] Another two cases were filed in March 1998,[4] two more in April 1998,[5] three in May 1998,[6] one in August 1998,[7] and one in

---

[1] The first lawsuit, civil no. 1997/081, was filed by Samuel Andrew, Tite Baptiste, James & Albina Charlemagne, Kaleb & Teresa Edwards, Carlos & Maria Encarnacion, Miguel A. and Lydia Encarnacion, Nelson M. Estephane, JeanBaptiste & Petronilla Francois, Peter Frank, Claredon & Pearline Gilbert, Winston Gilbert, Mario & Faith Harrigan, Ishmale Henry, John & Elma Hunt, William C. & Carmen Hernandez, Cliff & Martha Marshall, Frederick & Aloma Peters, Joseph & Alejandrina Prosper, Ramnarine & Laura Rambhajan, and Alfred & Eglantine Romney. The second lawsuit, civil no. 1997/082, was filed by Winston & Gwendolyn Crichlow, Miguel & Iris Perez, Harold & Bernice Gonzales, Francis & Christiana Guide, Joseph & Cheryl-Ann Narinesingh, Matthew & Lenore Raveneau, Miguel & Myrna Lopez, Mathias & Eleanor M. Roseline, Saulo & Juanita Saldana, and Cressy & Margaret St. Valle.

[2] The third lawsuit, civil no. 1997/152, was filed by Oliver & Alexandrine Abraham, Hector Delacruz, Francis & Fediana Edward, Harris & Agnes Edwardson, Victor & Gilberta Emanuel, Ignatius Gerson, Julitan & Veronica Inglis, Simon & Ivy Montoute, Nelson F. & Bernadine Figueroa, Alphonse Theophilus, Lewis & Bernadin Royer, Clenthworth & Heslyn Reynolds, Carmello Parilla & Luz Celnia Christian, Melvin & Iris Caesar, Samuel & Agnes Carr, Frank Cadogan, George & Linda Decaille, Joseph & Lucy Doctrine, Edgar & Ann Drew, Jerome & Cassandra Gill, John & Elma Hunt, Gregoire & Martina Jnofinn, Gregory Joseph, Peter & Ronise Leriche, Rupert & Mariza Marcelle, Hamilton Roberts, Rupert Roberts, Garnett T. & Juana Ryan, Anthony Samuel, Joseph & Susan Smith, Matthew Vernege, Jules & Magdalene Victor, Simon Taylor, Welton & Lucille Nicholas, Randolph Parker, Henreker & Millicent Liburd, Elfred & Paula Josephat, and Stephen Royer. The fourth lawsuit, civil no. 1997/153, was filed by Thomas & Maria Altagracia Johnhope, Alphonse & Rubina Baptiste, Ryan & Enid Alleyne, George & Marie Annette Auguste, Earnest A. & Cynthia Zachariah Baptist, Paul & Theresa Bell, Pashoon & Rosalind Boodoosingh, Roy Challenger, Kenneth & Claudia Creese, Pierre Cuffy, Willy & Cathrine Decembre, Benedict & Angela Eustash, Rupert & Enez Francis, Charles Granger, Raphael Harrigan, Paul Harris, George & Angela Henry, Kenrick & Margie James, Flavius & Rachel Joseph, Adolphus & Henrietta Nelson, Peter & Helena Paul, Joseph Plante, Hubert & Anastasia Polo, Roosevelt President, Joseph & Evarista Samson, Joseph & Helena Simmonds, Marcel & Melsades Scotland, Marcel & Roslyn Smith, and Olson & Rachael Wallace.

[3] The fifth lawsuit, civil no. 1998/010, was filed by Victor & Gilberta Emanual, Dionisio Ortiz & Mercedes Rodriguez Diaz, Thomas & Martha Raphael, Phillip & Martha Daniel, Noel & Gloria Euzebe, Peter Alexander, Henry & Agatha George, Jonathon & Edna Winston, Simon Taylor, Otto & Tulip Jean, Lennox Cato, Joseph & Millicent Pemberton, Ivan Campo, Eustace & Simmia Eugene, Reynaldo & Maria Gautier, Adrien Henry, Juan I. & Nellie Munoz, Sanford & Rosa Xavier.

[4] The sixth lawsuit, civil no. 1998/085, was filed by Alardo Baptista & Cexjesima Moreta on March 11, 1998. The seventh lawsuit, civil no. 1998/088, was filed on March 17, 1998 by St. George Felix, John Durity, Aldwyn & Barbara Dick, Rafael & Angela Saez, Joseph & Isabella Serieux, Wilfred Williams, Jr., Oswaldo Villafane, Vaughn & Idona Thomas, Joseph Felix, and Matthew & Jennifer Joseph.

[5] The seventh, civil no. 1998/099, and eighth lawsuits, civil no. 1998/100, were filed on April 8, 1998 by Pascal Frederick, Rafeal & Angela Saez, and Wilfred Williams, Jr., and by David & Leonora Smith and Gorcum Trim, respectively.

[6] The ninth lawsuit, civil no. 1998/118, and tenth lawsuit, civil no. 1998/119, were filed on May 6, 1998 by Charles & Teresa Jacob, and by Sharon Moore, respectively. The eleventh lawsuit, civil no. 1998/131, was filed on May 22, 1998 by Conrad & Melba Williams.

[7] The twelfth lawsuit, civil no. 1998/189, was filed on August 25, 1998 by Fabio Caminero & Denia Altagracia.

September 1998.[8] Only one case was filed in 1999, on May 27th.[9] None were filed in 2000. And the last two cases were filed on July 26, 2001.[10] All sixteen lawsuits were filed by a total of 152 men who had worked at the oil refinery owned and operated on St. Croix by HOVIC at that time. Many of the workers were joined by their spouses who sued for loss of their husbands' consortium. While all District Court plaintiffs asserted the same claims, they did not sue the same companies.

¶4 For example, the plaintiffs who joined Samuel Andrew in filing the first lawsuit (hereinafter "the *Andrew* Plaintiffs") sued Hess, Borinquen Insulation Company, Inc. ("Borinquen"), Raytheon Engineers & Constructors, Inc., individually and as successor to Litwin Corporation ("Litwin") and Litwin Pan-American Corporation ("Litwin Pan-Am"), Owens Corning Fiberglass Corporation, Raritan Supply Company ("Raritan"), individually and as successor to Bridge Supply Company, Madsen & Howell, Inc. ("M&H"), Union Pump Company ("Union Pump"), Pittsburgh Corning Corporation ("Pittsburgh Corning"), individually and as successor to Unarco Industries, Garlock, Inc. ("Garlock"), GAF Corporation ("GAF"), individually and as successor to Ruberoid, Flexitallic Gasket Company, Armstrong World Industries, CertainTeed Products Corporation ("CertainTeed"), Foster Wheeler Corporation ("Foster Wheeler"), individually and as successor to Forty-Eight Insulations, Inc., 3M, Westinghouse Electric Corporation ("Westinghouse"), Ingersoll Rand Corporation ("Ingersoll Rand"), Elliot Company ("Elliot"), Riggers & Erectors International, Inc. ("Riggers"), Dresser Industries, Inc. ("Dresser"), individually and as successor to Pacific Pumps, Inc., and Shell Oil Company ("Shell"). The persons who joined Winston and Gwendolyn Crichlow ("the *Crichlow* Plaintiffs") in filing the second lawsuit --as well as those who joined Oliver and Alexandrine Abraham ("the *Abraham* Plaintiffs") in filing the third lawsuit— all sued the same businesses and companies as the Andrew Plaintiffs. But those persons who joined Luis and Antonia Carrion in filing the fifteenth lawsuit ("the *Carrion* Plaintiffs") sued Hess, Litwin directly (not through Raytheon purportedly as Litwin's successor), Raritan, M&H, Union Pump, Garlock, CertainTeed,

---

[8] The thirteenth lawsuit, civil no. 1998/194, was filed on September 2, 1998 by Isidro & Patria Cruz Cabreja.

[9] The fourteenth lawsuit, civil no. 1999/100, was filed by Cesar & Carmen Iris Caraballo.

[10] The fifteenth lawsuit, civil no. 2001/126, was filed by Luis & Antonia Carrion, Thomas & Francilla Cenac, Joseph & Jessica Didier, Rawlins Doodhai, Timothy & Marie Ganderson, Edmilford Green, Ivaughn & Jone Hurtault, Bertie & Ingrid Isaac, Dominique & Pauline James, Paul & Mary Leo, Lionel Mondiser, Charles & Oraine Roper, Angel Santos, Keiran & Anne Marie St. Ange, Hudson Valmont, and Isiah & Nina Williams. The sixteenth, and final, lawsuit, civil no. 2001/127, was filed by Hugh & Linda Morgan.

Westinghouse, Ingersoll Rand, Elliott, Riggers, Dresser, and Shell. But the Carrion Plaintiffs also sued Harbison-Walker Refractories, Fluor Daniel, individually and as successor to Fluor Engineers & Constructors, Inc., Fluor Corporation, A.P. Green Industries, Inc., individually and as successor to A.P. Green Refractories Company, Tuthill Corporation ("Tuthill"), individually and as successor to Coppus Murray Group or Coppus Turbines, Universal Oil Products Company ("UOP"), Alltite Gasket Company ("Alltite"), Mobil Oil Company, John Crane Packing Company ("John Crane"), and Rubber & Gasket Company of Puerto Rico ("R&G"). They also sued Gasket Holdings, Inc. as successor to Flexitallic. By contrast, Hugh and Linda Morgan, who filed the last lawsuit, sued the same businesses and companies as the *Carrion* Plaintiffs. But they also sued Lockheed Martin Corporation ("LMC") individually and as successor to Martin Marietta Corporation, Martin Marietta Aluminum, Inc., and Martin Marietta Aluminum Properties, Inc., and sued Martin Marietta Corporation directly in its individual and successor capacity and Martin Marietta Materials, Inc., in its individual and successor capacities.

¶5 Although the JPML eventually transferred all the District Court cases to the Eastern District, they were not transferred at the same time. For example, the JPML issued Conditional Transfer Order ("CTO") No. 118 on November 26, 1997, to transfer the first two cases, *Andrew* and *Crichlow*, to the Eastern District on November 28, 2001 by CTO No. 208. Yet, the JPML did not transfer the eleventh case, *Williams*, until July 21, 2003 by CTO No. 226. And the Eastern District did not initiate formal transfer proceedings for almost every case until May 25, 2007, when Transfer Order No. 35 directed the Clerk of the Eastern District to initiate proceedings to transfer *Andrew, Crichlow, Abraham, Johnhope, Emanual, Moreta, Felix, Frederick, Smith, Jacob, Moore, Williams, Caminero, Cabreja*, and *Morgan. Caraballo* was not transferred until April 1, 2011, when Transfer Order No. 961 was issued. And it does not appear that *Carrion* was transferred.

¶6 Years before the District Court cases were transferred, conditionally or otherwise, all but two cases were stayed by magistrate judge order pending transfer. Notwithstanding the stay—and in some instances notwithstanding the transfer—proceedings still occurred in the District Court cases. It is outside the scope of this Opinion to restate the procedural history of the District Court cases or summarize the effect of MDL transfer orders. But a few examples suffice to make the point. Even though *Andrew*, for example, had been stayed by the District Court on October 23, 1997, and

conditionally transferred by the JPML on November 26, 1997, the District Court—not the Eastern District—approved, on May 21, 2003, a stipulation the *Andrew* Plaintiffs had filed to dismiss their claims against Westinghouse with prejudice. Similarly, even though *Caraballo* was closed by the Clerk of the District Court on April 10, 2000, purportedly because it had been transferred to the MDL, the District Court still dismissed the Caraballos' claims with prejudice against Westinghouse, R&G, and Fluor Daniel before transfer and against Mobil Oil Company after transfer.

¶7    While proceedings were underway in federal court, Hess, Litwin, Litwin Pan-Am, Riggers, and Borinquen, along with nonparties HOVIC, Fisher-Hess Construction Company, HOVENSA, LLC, and St. Croix Petrochemical Corporation, agreed to settle with the District Court Plaintiffs following a global mediation held in Miami, Florida between October 21st and 23rd, 2002 (collectively referred to as "Settling Defendants" in the agreement and hereinafter in this Opinion). The parties signed a formal agreement on January 16, 2003. Pursuant to the settlement agreement, the Settling Defendants released any and all claims against each other and denied liability to the District Court Plaintiffs generally, but retained the right to pursue other claims, including contribution and indemnification, against anyone who was not a party to the agreement. However, the agreement also provided that settlement would "not be construed to release any party other than those named and the Parties reserve their rights to pursue claims against other parties who are not signatories to this Agreement." (Def. Strahman Valves, Inc.'s Mot. for Summ. J., Ex. 4.) Settlement monies were paid by HOVIC to the District Court Plaintiffs "on or about March 26, 2003." (Compl. ¶4.) However, the dockets for the District Court cases do not show that any stipulated dismissal by and between the Settling Defendants and the District Court Plaintiffs were filed or approved by either the District Court or the Eastern District. Instead, except for the Carrion Plaintiffs, whose case was never transferred, all District Court Plaintiffs' claims were dismissed by the Eastern District for failure to prosecute either on August 25, 2009 or October 22, 2009.

### B. *Territorial Asbestos Indemnity Claims: Hess Oil V.I. Corp. v. Fluor Daniel, et al.*

¶8    Two years after the District Court settlement, HOVIC filed a complaint in the Superior Court of the Virgin Islands on March 29, 2005, "to recover only those settlement monies paid to [the District Court Plaintiffs] . . . ." *Id.* ¶ 5. HOVIC represented that it had been named as a defendant by the District Court Plaintiffs and attached to its complaint "[a] list of all Claimants and Civil Case

Numbers . . . [which HOVIC] fully incorporated . . . by reference . . . ." *Id.* ¶ 3. HOVIC asserted claims of contribution (Count I), common law and contractual indemnification (Counts II and III), breach of contract for failure to obtain insurance (Count IV), and breach of contract for failure to name HOVIC as an additional insured (Count V) against most Defendants but not LMC and the Martin Marietta entities (collectively "Martin Marietta Defendants"). Against the Martin Marietta Defendants, HOVIC asserted a second contribution claim (Count VI) based on a premises-liability theory. HOVIC alleged that the District Court Plaintiffs had been "employed on premises owned, operated and controlled by . . . [the Martin Marietta Defendants]." *Id.* at 18. Because the Martin Marietta Defendants "failed to exercise reasonable care to provide . . . a reasonably safe place to work," *id.*, the Martin Marietta Defendants were partly to blame for the District Court Plaintiffs' injuries.

¶9       Because the global mediation in Miami included asbestos claimants from both the Territorial Court and the District Court, HOVIC certified in its complaint that the *In re: Kelvin Manbodh Asbestos Litigation Series*, Master Case No. 1997/324, was related and that those cases should be consolidated. HOVIC filed a motion to that effect in Manbodh on June 6, 2005, "notwithstanding that the Court (Cabret, P.J.) had 'ruled from the bench' during a May 4, 2005 status conference 'that parties wishing to recover settlement monies should follow the same procedures that were followed in the previous asbestos cases.'" *In re: Kelvin Manbodh Asbestos Litig. Series*, 69 V.I. 394, 414 (Super. Ct. 2018) (quoting *In re: Kelvin Manbodh Asbestos Litig. Series*, Master Case No. 324/1997, 2005 V.I. LEXIS 40, *4 n.1 (V.I. Super. Ct. Oct. 21, 2005)).

¶10      Although HOVIC only filed its motion to consolidate in *Manbodh*, John Zink filed a joint opposition/motion in this case on June 16, 2005, opposing consolidation and moving to dismiss for lack of subject-matter jurisdiction. John Zink argued "that HOVIC should have filed a separate civil complaint in the case of each of the underlying federal court plaintiffs . . . to avoid the complexity and confusion which will certainly result from these 149 separate claims for relief being presented under a single caption . . . ." (Def. John Zink, LLC's Opp'n to Consolidation / Mot. to Dismiss 4, filed Jun 16, 2005.) John Zink next argued that HOVIC should have filed in the District Court because the District Court Plaintiffs' cases were still pending. Finally, John Zink argued that the complaint should be dismissed because HOVIC was not a defendant in the District Court cases. In support, John Zink

attached copies of the captions from *Andrew, Crichlow, Abraham, Morgan,* and *Carrion,* copies of orders imposing a stay in *Williams* and in *Jacob* pending transfer to the MDL, and a copy of CTO No. 118. CBI Services, Parsons Infrastructure and Technology Group, Inc. ("PITGI"), Resal, Austin Industrial, R&G, Amdura, Standco, Gerald Packing & Belting Corporation, CertainTeed, John Crane, Tuthill, Elliott, Born Inc., UOP, and Raritan joined in John Zink's motion. HOVIC opposed several Defendants' joinder but did not file a response in opposition to John Zink.

¶11    Next, Elliott moved on July 13, 2005, for partial summary judgment for all claims related to the District Court Plaintiffs who filed suit in 1997, 1998, and 1999. Elliott too noted that HOVIC was not a party to the District Court cases but also argued that HOVIC did not have any potential liability in 2003, when it settled with the District Court Plaintiffs, because the statute of limitations had run for everyone except the *Carrion* Plaintiffs and the *Morgan* Plaintiffs. In support, Elliott attached the docket for all the District Court cases (as of June 22, 2005) and copies of the complaints from *Abraham* and *Carrion.* CBI Services, PITGI, John Crane, Alltite, Tuthill, Born Inc., UOP, and Raritan joined Elliott's motion. HOVIC opposed in part because it had been "assigned the right of Amerada Hess Corporation to recover for monies paid on its behalf in settlement of the District Court lawsuits." (Pl.'s Mem. in Opp'n to Mot. for Partial Summ. J. 12, filed July 13, 2005.) HOVIC conceded, however, "that it was not a formally named defendant in the District Court lawsuits." *Id.*

¶12    Then, PITGI and CBI Services, on August 5, 2005, each filed a motion to dismiss for failure to state a claim. CBI Services and PITGI argued that HOVIC's contribution and common law indemnification claims fail because the complaint did not allege that HOVIC extinguished their potential liability to the District Court Plaintiffs. The Settlement Agreement, which they attached to their motions, show that all parties, including the District Court Plaintiffs, retained the right to pursue claims against anyone not a party to the agreement. CBI Services and PITGI also moved to dismiss the contractual indemnification claim because they could not have breached any duty to defend HOVIC. HOVIC was not named as a defendant in the District Court cases. Lastly, PITGI and CBI Services challenged the sufficiency of the remaining contract claims insofar as both claims are premised on language in purchase orders issued over several decades. PITGI and CBI Services assert that the purchase orders did not rise to the level of formal contracts and, further, that the statute of limitations had run. Tuthill, Born Inc., UOP, Raritan, and Elliott joined both motions. HOVIC opposed.

¶13    3M followed, moving on August 22, 2005, to dismiss the breach of contract claims. 3M was not named as a defendant on the contribution and indemnification claims. But as to the failure to insure claim, 3M asserted that it was time barred. HOVIC's complaint alleged that the duty to obtain insurance was based on purchase orders issued from 1965 to 1982 and from 1984 to 1998. But the statute of limitations on contract claims is six years in the Virgin Islands. So, 3M asserted that its alleged failure "to obtain insurance and to furnish certificates of insurance arose, if at all, at the time that the relevant shipments or transfers of materials were made." (Def. 3M's Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. 4, filed Aug. 22, 2005 (hereinafter "3M Mot.").) Thus, according to 3M, the complaint fails on its face to state a claim for relief and Count IV should be dismissed. Tuthill, Born Inc., UOP, Elliott, and Raritan joined in 3M's motion. HOVIC opposed.

¶14    R&G, on September 16, 2005, also moved to dismiss but on grounds different than the other Defendants. R&G asserted that HOVIC lacked standing to file suit because it was not a party to the District Court cases. R&G noted that HOVIC "fails to mention in its Complaint that it actually was not a party to any of the cases which were incorporated into the <u>Andrews Asbestos Litigation Series</u>." (Def. Rubber & Gasket Co. of P.R.'s Mot. to Dismiss 3, filed Sept. 16, 2005.) "This," R&G contended, "brings the question of what it is that Hovic seeks to be indemnified for." *Id.* "The fact that Hovic was not a party to the Andrews Asbestos Litigation leaves nothing but doubt," R&G argued, "as to why Hovic may have had to vigorously litigate . . . ." *Id.* at 4. Thus, "the uncontroverted issue that Hovic was not a party to the Andrews Asbestos Litigation is sufficient in and of itself for this Court to dismiss the present matter for a lack of standing." *Id.* at 5. Tuthill, Born Inc., UOP, Elliott, and Raritan joined. HOVIC opposed.

¶15    Thereafter, several Defendants, including John Zink, PITIG, and CBI Services among others, moved to stay discovery until the dispositive motions had been ruled on. CBI Services and PITGI, for example, argued that further discovery would be inappropriate until certain threshold issues were resolved, including a directive the Court (Cabret, P.J.) had "issued from the bench when it denied HOVIC's motion to consolidate this action with . . . *Manbodh* . . . ." (Def. CBI Servs., Inc.'s Mem. of Law in Supp. of Mot. for Stay of Disc. 6, filed Nov. 4, 2005.) Specifically, CBI Services (and PITGI as each made the same arguments) cited to a October 21, 2005 Order issued in *Manbodh* directing that HOVIC's "complaint would only be accepted in the name of the first party listed." *In re: Kelvin*

*Manbodh Asbestos Litig. Series*, 2005 V.I. LEXIS 40 at *4 n.2. HOVIC initially opposed staying discovery but later relented, agreeing that "a stay of discovery in this matter is warranted pending the Court's decision on the dispositive motions before it . . . ." (Pl.'s Jt Limited Joinder in Defs.' Motions to Stay All Further Proceedings 4, filed Nov. 23, 2005.) Although the motions to stay were never ruled on, discovery was under a *de facto* stay by agreement of the parties.

¶16     HOVIC and CertainTeed later stipulated to dismiss Counts I and II with prejudice, which the Court (Cabret, J.) approved on November 27, 2006, entered November 30, 2006. Similar stipulations were filed by and between HOVIC and Elliott and HOVIC and Raritan, each agreeing to dismiss Counts I and II with prejudice. Then, on January 11, 2012, Strahman Valves filed a motion for summary judgment. Like the other Defendants, Strahman Valves asserted that HOVIC failed to extinguish Strahman Valves' potential liability to the District Court Plaintiffs and that HOVIC was not sued by the District Court Plaintiffs because "that court would have lacked subject matter jurisdiction" since "HOVIC is a Virgin Islands corporation and the Asbestos Claimants[, i.e., the District Court Plaintiffs,] are Virgin Islands domiciliaries." (Def. Strahman Valves, Inc.'s Motion for Summ. J. 3, filed Jan. 11, 2012.) And like Elliott, Strahman Valves asserted that HOVIC did not have any liability to any District Court Plaintiff "except for those who had brought their lawsuits after March 26, 2011." *Id.* Citing *Joseph v. Hess Oil Virgin Islands Corporation*, 867 F.2d 179 (3d Cir. 1989), in which HOVIC successfully argued that the statute of limitations for an asbestos-related injury should be two-years from the date the plaintiff knew or should have known, Strahman Valves argued that everyone except the *Carrion* Plaintiffs and the *Morgan* Plaintiffs knew or should have known by March 26, 2001 that they could bring a claim against HOVIC for asbestos-related injuries. As before, HOVIC conceded that it was not named as a defendant by the District Court Plaintiffs. But HOVIC countered that "there were allegations of negligence for premises liability and of products liability asserted." (Pl.'s Mem. in Opp'n to Mot. for Partial Summ. J. 2, filed Jan. 31, 2012.) "Despite not being a direct party, HOVIC also settled with the asbestos claimants in the Andrews Asbestos Litigation as the real party in interest on the underlying plaintiffs' claims." *Id.*

¶17     Several years later, HOVIC filed a joint motion on October 19, 2018, with the Fluor Defendants, the Martin Marietta Defendants, UOP, and Saint-Gobain Advance Ceramics ("Saint-Gobain") to dismiss its claims (as well as any counterclaims and crossclaims) with prejudice. Three

months later, on January 10, 2019, the Presiding Judge of the Superior Court designated this case as complex, transferred it to the Complex Litigation Division, and reassigned it to the undersigned judicial officer. CertainTeed filed a notice of bankruptcy on January 31, 2020.

¶18   On February 5, 2020, as amended February 6, 2020, this Court granted the October 19, 2018 joint motion, dismissing UOP, the Fluor Defendants, the Martin Marietta Defendants, and Saint-Gobain from this case. The Court also resolved several ancillary motions and scheduled this case for a hearing and oral argument. The Court alerted the parties that intervening changes in the law and several stipulated dismissals may have changed the posture of this case, including what motions were pending. The Court also noted that certain Defendants had joined other Defendants' pre-answer after they had answered HOVIC's complaint; other Defendants were served but never appeared or appeared late and joined dispositive motions without moving to excuse their delay. The Court also acknowledged the May 4, 2005 Order issued in *Manbodh* noting concern with how HOVIC joined its claims. In lieu of ordering HOVIC to show cause why its claims should not be severed, the Court directed the parties to come prepared to address it at oral argument. Following the March 19, 2020 hearing, held telephonically due to the COVID-19 measure implemented by the Judicial Branch, the Court took the motions and arguments under advisement.

## II.   DISCUSSION

¶19   Ordinarily, courts address motions separately because "movants generally have the burden of proof or persuasion on their own motions." *Victor v. Hess Oil V.I. Corp.*, 69 V.I. 484, 494 (Super. Ct. 2018). *But cf., e.g., Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion."). And arguments or issues not raised by the movant or inadequately briefed are generally deemed waived. But in complex cases, courts often must take a different approach to resolving complicated issues. *Cf.* V.I. R. Civ. P. 16(c)(2)(L) (letting courts "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems[.]"); *accord* JPML R. 6.1(c) (construing no response to a motion as consent and prohibiting raising additional issues by joinder) ("Any other party may file a response within 21 days after filing of a motion. Failure to respond to a motion shall be treated as that party's acquiescence to it. A joinder in a motion shall not add any action to that

motion."). *See also generally, e.g., In re: Japanese Elec. Prods. Antitrust Litig.*, 631 F.2d 1069 (3d Cir. 1980) (recognizing that some cases may be too complex for jury trials and balancing the right to due process against the right to trial by jury). "Since traditional methods of handling the caseload are breaking down, it is the obligation of the courts to adopt more novel approaches. Judges and courthouses cannot be multiplied indefinitely. Innovative approaches to processing complex litigation are the order of the day." *United States v. Reaves*, 636 F. Supp. 1575, 1579-80 (E.D. Ky. 1986).

¶20 In this case, five motions to dismiss, two challenging jurisdiction, and two motions for summary judgment are pending. And three of the dismissal motions arguably must be converted to motions for summary judgment since they present matters outside the pleadings. *See* V.I. R. Civ. P. 12(d) ("If, on a motion under Rule 12 (b)(6) or 12 (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). *But cf. Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings a court may consider on a motion to dismiss include 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." (citations omitted)); *accord Soderlund v. Zibolski*, 874 N.W.2d 561, 570-71 (Wis. Ct. App. 2015) ("The incorporation-by-reference doctrine 'prevents a plaintiff from evading dismissal simply by failing to attach to his complaint a document that proves his claim has no merit.'" (brackets and ellipsis omitted) (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). But rather than take the traditional motion-by-motion approach, the Court will instead take an issue-by-issue approach. Given the age of this case, the quantity of motions pending, and the changes in the substantive and procedural law since the motions were filed—the Court finds that the best approach here is not to address each motion individually, but instead to address collectively the different issues raised.

### A. *Subject-Matter Jurisdiction / Standing / Real Party in Interest*

¶21 John Zink and R&G argue that the Superior Court lacks jurisdiction because HOVIC lacked standing to commence this action. (*See* Def. John Zink, LLC's Opp'n / Mot. 8 ("HOVIC has no standing

to file this action because it was not a party defendant, subject to a potential judgment in favor of the Plaintiff in any particular case, it has no standing to file the subject action."); *see* Def. Rubber & Gasket Co. of P.R.'s Mot. to Dismiss 5 ("In fact, the uncontroverted issue that Hovic was not a party to the Andrews Asbestos Litigation is sufficient in and of itself for this Court to dismiss the present matter for a lack of standing.").) At the time when these motions were filed, standing in the Virgin Islands "'represent[ed] a jurisdictional requirement which remain[ed] open to review at all stages of the litigation.'" *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 125 n.4 (2009) (*per curiam*) (brackets and citation omitted), *overruled by Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (2012). *Accord V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 47 V.I. 430, 436 (Super. Ct. 2006) ("This Court also lacks subject matter jurisdiction over a dispute if a party lacks standing, as standing is a component of subject matter jurisdiction."); *Standing Comm. on Conservation, Rec., & Cultural Affairs v. V.I. Port Auth.*, 21 V.I. 584, 591 (Terr. Ct. 1985) ("Since the Plaintiff lacks standing and the capacity to sue, this Court cannot exercise subject matter jurisdiction.").

¶22    But since then, the Supreme Court of the Virgin Islands has clarified that "standing, like mootness, functions in the courts of the Virgin Islands as a claims processing rule that is subject to waiver should the party asserting the issue fail to raise it in a timely manner." *Benjamin*, 56 V.I. at 564-65. The Virgin Islands Supreme Court had acknowledged that the Supreme "Court and the Superior Court are not Article III courts," but concluded, nonetheless, that "Article III's requirement that a litigant have standing to invoke a court's authority ha[d] been incorporated into Virgin Islands jurisprudence." *Geigel*, 51 V.I. at 124. But the Court subsequently overruled its prior position, *see Benjamin*, 56 V.I. at 564, holding instead that standing must be asserted at the earliest opportunity. *See id.* at 564-65; *see also United Corp. v. Hamed*, 64 V.I. 297, 304 (2016) ("We therefore take this opportunity to reaffirm that 'standing'—as that concept is understood in federal constitutional law—does not exist in any form in Virgin Islands courts."). In this instance, John Zink and R&G raised standing at the earliest opportunity. Neither John Zink nor R&G answered HOVIC's complaint yet. But they raised standing as if it were jurisdictional and it is not. The concern now is over the standard of review.

¶23    The Virgin Islands Supreme Court acknowledge that "whether the party bringing suit ha[s] a right to the relief it [i]s seeking .... goes to the merits of the cause of action—not the Superior

Court's authority to hear the case in the first place." *United Corp.*, 64 V.I. at 303. Thus, standing in the Virgin Islands challenges whether a plaintiff has stated a claim for relief. Since standing, like mootness and other federal constitutional doctrines, are claims-processing rules in the Virgin Islands, the rule that governs a motion to dismiss for lack of standing is not Rule 12(b)(1), lack of subject-matter jurisdiction, but rather "Rule 12(b)(6), failure to state a claim for relief, Rule 12(c), judgment on the pleadings, or Rule 56, summary judgment." *Stanley v. V.I. Bureau of Corr.*, 2020 VI Super 47, ¶ 11 (concluding same as to mootness). The problem is that, while R&G did not submit materials outside the pleadings, John Zink did. But R&G, like John Zink, nonetheless based its entire motion on extra-pleading materials. And R&G also joined John Zink's motion.

¶24    At the time the motions were filed, referring to matters submitted outside the pleadings would not have been a concern. *See id.* at ¶ 13 ("'The majority of the Courts of Appeals that have considered this issue conclude that district courts may consider material outside the pleadings in ruling on 12(b)(2) motions to dismiss.'"); *accord* V.I. R. Civ. P. 12(d) ("If, on a motion *under Rule 12(b)(6) or 12(c)*, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . ." (emphasis added)). But since John Zink's motion must now be governed by Rule 12(b)(6), submitting copies of several documents from the District Court cases was, technically, submitting documents outside the pleadings. The documents John Zink submitted were not attached to HOVIC's complaint. But converting a pre-answer motion to a motion for summary judgment is not necessary since HOVIC incorporated the documents John Zink submitted by referencing them in its complaint.

> Under the doctrine of incorporation by reference . . . 'a document attached to a motion [to dismiss or] for judgment on the pleadings may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed."

*Ackah v. Hershey Foods Corp.*, 236 F. Supp. 2d 440, 443 (M.D. Pa. 2002) (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)); *accord Burton v. First Bank of P.R.*, 49 V.I. 16, 20-21 (Super. Ct. 2007 ("Although the Court relies upon documents such as the Plaintiff's billing statements, the complaint referred to these indisputably authentic documents, thus making them an operative component of Plaintiff's allegations." (citing *Pension Benefit Guaranty Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Horsley*, 304 F.3d at 1134 (citing *Beddall v. State St. Bank & Trust*

*Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). This Court agrees with and adopts the incorporation-by-reference doctrine.

¶25    "Ordinarily, when ruling on a pre-answer motion to dismiss, the Court must accept the plaintiff's allegations as true . . . 'and draw all fair inferences from such allegations.'" *Stanley*, 2020 VI Super 47 at ¶ 12 (citation omitted)). But the incorporation-by-reference doctrine permits a court to review the actual document referenced in the complaint "to ensure that the plaintiff has not misrepresented its contents and that any inference the plaintiff seeks to have drawn is a reasonable one." *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 797 (Del. Ch. 2016), *overruled in part on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933, 939 (Del. 2019). The doctrine further "limits the ability of the plaintiff to take language out of context, because the defendants can point the court to the entire document . . . [and] enables courts to dispose of meritless complaints at the pleading stage." *Id.* "'Without the ability to consider the document at issue in its entirety, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.'" *Id.* (quoting *In re: Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006)).

> With the incorporation-by-reference doctrine, a complaint may, despite allegations to the contrary, be dismissed where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations. Likewise, a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law.

*Id.* (quotation marks and citations omitted). This case presents a perfect example of the need for the incorporation-by reference doctrine.

¶26    HOVIC attached to its complaint a list of the District Court plaintiff-workers and provided each Plaintiff's respective case number. HOVIC then incorporated those cases into its complaint. (*See* Compl. ¶ 3 ("A list of all Claimants and Civil Case Numbers are attached hereto as 'Exhibit 'A'" and all Claimants thereon are fully incorporated herein by reference . . . .").) But HOVIC also alleged that the "Claimants," meaning the District Court Plaintiffs, had "instituted lawsuits claiming compensatory and punitive damages against Plaintiff HESS OIL VIRGIN ISLANDS CORP. as well as other entities, in the District Court of the U.S. Virgin Islands." *Id.* Yet, John Zink showed—by attaching copies of the captions of the *Andrew* and *Crichlow* complaints, for example—that HOVIC

was not sued in the District Court. The documents John Zink submitted are undisputed. And they are central to HOVIC's complaint. If the District Court cases had not been filed, HOVIC would not have filed this case.

¶27　HOVIC does not dispute that the documents it incorporated into its complaint contradict the allegations in its complaint. In fact, "HOVIC acknowledges that it was not a formally named defendant in the District Court lawsuits." (Pl.'s Mot. & Mem. of Law in Opp'n to Rubber & Gasket Co. of P.R., Inc.'s Mot. to Dismiss 9, filed Sept. 23, 2005 (hereinafter "R&G Opp'n").) And HOVIC concedes that actions must "'be prosecuted in the name of the real party in interest . . . .'" *Id.* at 8 (quoting Fed. R. Civ. P. 17(a)). HOVIC counters, on the one hand, that it has standing because Hess "has the right to assign to HOVIC its rights of contribution and indemnification relating to the District Court actions." *Id.* Yet, HOVIC does not represent—at least not in opposition to R&G—that Hess actually assigned its rights to HOVIC. In opposition to CBI Services and PITIG, HOVIC represented that Hess *"has assigned* to HOVIC its rights of contribution and indemnification relating to the District Court actions." (Pl.'s Mot. & Mem. of Law in Opp'n to CBI Servs. Inc. & PITGI's Mots. to Dismiss 4, filed Aug. 16, 2005 (hereinafter "PITIG/CBI Opp'n").) During the March 19, 2020 oral argument, HOVIC reiterated that Hess had assigned its rights to HOVIC. Yet, on the other hand, HOVIC also asserts in opposition to R&G that "HOVIC is the real party in interest with a personal stake in the outcome of this controversy." (R&G Opp'n 10.)

¶28　Unfortunately, the Court cannot discern at this stage whether HOVIC has standing. The Court must take as true HOVIC's allegations that its purchase orders submitted to John Zink and R&G, among others, included a requirement that they obtain insurance and name HOVIC as an additional insured. If the Defendants did not obtain insurance, that could constitute a breach. Whether HOVIC could prove damages (since it was not sued by the District Court Plaintiffs) is a different matter. But the Court cannot find at this juncture that HOVIC lacks standing to sue for breach of contract.

¶29　But more importantly, what John Zink and R&G are really getting at is that HOVIC is not the real party in interest here. Now and at the time when HOVIC filed its complaint, an action had to "be prosecuted in the name of the real party in interest." V.I. R. Civ. P. 17(a)(1); *accord* Fed. R. Civ. P. 17(a) (2005 ed.) ("Every action shall be prosecuted in the name of the real party in interest."). *See also Brooks v. Gov't of the V.I.*, 58 V.I. 417, 427 n.11 (2013). "[T]he main thrust of Rule 17 is to allow

a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest[.]" *Brooks*, 58 V.I. at 428 (quotation marks and citations omitted)). Federal courts have held that Rule 17 requires "the defendant to object in time to allow the opportunity for joinder of the ostensible real party in interest, and the defense may be waived if the defendant does not timely object." *In re: Signal Int'l, LLC*, 579 F.3d 478, 487-88 (5th Cir. 2009); *accord Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir. 1982) ("The real party in interest defense is 'for the benefit of a defendant should be raised in timely fashion or it may be deemed waived.'" (quoting *Audio Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715, 719 (10th Cir. 1976)). Since Rule 17(a) of the Virgin Islands Rules of Civil Procedure is patterned after Rule 17(a) of the Federal Rules of Civil Procedure, the Court looks to federal precedent for guidance. *See Slack v. Slack*, 69 V.I. 567, 573 (2018) (recognizing that "the body of case law" construing the federal rule may be consulted when construing the Virgin Islands rule). And since federal courts refer to the real party in interest as a "defense," like any other defense, it must be raised at the earliest opportunity. *See Coastal Air Transp. v. Royer*, 64 V.I. 645, 658 (2016) ("[A]ffirmative defenses are waived if not raised at the first opportunity in the Superior Court[.]" (citation omitted)).

¶30    Again, HOVIC may lack standing—and thus, may have failed to state one or more claims—but the concerns that John Zink and R&G raised about standing really go to whether HOVIC is the real party in interest in this case. The law is clear, however, that

> [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a) (2005 ed.); *accord* V.I. R. Civ. P 17(a)(2) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."). "The Federal Rules do not set out a specific procedure for raising a Rule 17(a) objection, but courts have noted that it should be made in a timely manner, such as in an answer or responsive pleading." *Forza Techs., LLC v. Premier Research Labs, LP*, No. 12-CV-7905, 2013 U.S. Dist. LEXIS 171753, *5 (N.D. Ill. Dec. 5, 2013) (citing *In re: Signal Int'l, LLC*, 579 F.3d at

487)). Thus, the Court has nothing to look to for guidance. However, since the real party in interest is a defense that must be raised at the earliest opportunity, the Court finds that John Zink and R&G timely raised it here by moving to dismiss for failure to state a claim. But "a real party in interest can substitute even after the statute of limitations has run, as long as the matter was originally initiated during the limitations period." *Brooks*, 58 V.I. at 428 (citation omitted). Thus, the Court must allow Hess "a reasonable time . . . to ratify, join, or be substituted into the action." V.I. R. Civ. P. 17(a)(2). For this reason, the motions, challenging HOVIC's standing or that HOVIC is not the real party in interest, must be denied.

### B. *Contribution / Indemnification as to Some District Court Cases*

¶31     Similar reasons compel the Court to deny the summary judgment motions filed by Elliott, as joined by CBI Services, PITGI, John Crane, Alltite, Tuthill, Born Inc. and Raritan.[11] Elliott argues that HOVIC's contribution (Count I) and common law indemnification (Count II) claims fail as a matter of law because "any potential claims against HOVIC by the 1997 – 1999 asbestos claimants were barred by the two-year statute of limitations at the time of HOVIC's alleged March 2003 settlements . . . ." (Def. Elliott Co.'s Mot. for Summ. J. & for Sanctions 14, filed July 27, 2005.)

¶32     HOVIC opposes Elliott's motion, asserting that "HOVIC was the real party in interest [in the District Court cases]." (Pl.'s Mem. in Opp'n to Mot. for Partial Summ J. 5, filed July 13, 2005.) HOVIC further asserts that, "as the real party in interest, [it] was required to expend great sums of money in defending and settling the[ District Court] actions." *Id.* at 7. Yet HOVIC also asserts that "HOVIC was assigned the right of Amerada Hess Corporation to recover for monies paid on its behalf in settlement of the District Court lawsuits." *Id.* at 12. HOVIC then argues that "[t]he fact that HOVIC was not a named defendant in the District Court actions cannot and should not preclude HOVIC from pursuing its right to contribution and indemnity." *Id.* at 13. But HOVIC failed to cite any authority in support. Other than the same list of District Court Plaintiffs and their case numbers, which HOVIC attached to its complaint, HOVIC failed to submit any materials in opposition.

---

[11] Elliott's motion was rendered moot as to itself and UOP who joined when the Court approved the stipulations between HOVIC and Raritan and HOVIC and Elliott to dismiss Counts I and II. Elliott's motion remains pending and is not moot as to those Defendants who joined and have not been dismissed. *See Der Weer v. Hess Oil V.I. Corp.*, 60 V.I. 91, 98-100 (Super. Ct. 2014).

¶33    "'Summary judgment is a drastic remedy and should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact.'" *Alexander v. Alexander*, 65 V.I. 372, 378 (2016) (brackets and citation omitted). As the movant, Elliott "bears the initial burden of showing that there is no genuine issue of material fact." *Anderson v. Am. Fed'n of Teachers*, 67 V.I. 777, 788 (2017). Courts "'must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party, and . . . take the non-moving party's conflicting allegations as true if supported by proper proofs.'" *Palisoc v. Poblete*, 60 V.I. 607, 613 (2014) (citation omitted). But "'the nonmoving party may not rest on its allegations alone . . . .'" *Anderson*, 67 V.I. at 789 (citation omitted). Instead, the non-moving party "'must present actual evidence, amounting to more than a scintilla,' in support of its position." *Id.* (citation omitted). And even though entering judgment summarily is a drastic remedy, "summary judgment may be entered against a party who fails to sufficiently show the existence of an element essential to that party's case on which that party will bear the burden of proof at trial[.]" *Palisoc*, 60 V.I. at 613 (citing *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 419 (2009)). The reason why: "'One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.'" *Sealey-Christian*, 52 V.I. at 421 (brackets omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

¶34    In support of its motion, Elliott submitted the dockets of all the District Court cases as well as the *Andrew* complaint and the *Carrion* complaint. These documents show—and HOVIC does not dispute—that HOVIC was not named as a defendant in the District Court cases. Hess was. And to the extent that HOVIC has represented that Hess assigned its rights to HOVIC to seek contribution and indemnification, then Elliott's motion must be denied to allow Hess "a reasonable time . . . to ratify, join, or be substituted into the action." V.I. R. Civ. P. 17(a)(2). Although HOVIC failed to submit any proof to support its assertion that Hess assigned its rights to HOVIC, HOVIC does make the assertion, and reiterated it during the March 19, 2020 argument. The Court "may not dismiss an action for failure to prosecute in the name of the real party in interest . . . ." *Id.* Thus, Hess must have a chance first to ratify, join, or substitute.

¶35    But Elliott, in reply, correctly points out that HOVIC failed to show "how HOVIC could possibly be the real party in interest in lawsuits filed in the District Court of the Virgin Islands by

individuals who were residents and domiciliaries of the U.S. Virgin Islands . . . ." (Def. Elliott Co.'s Reply to Opp'n for Mot. for Partial Summ. J. 7, filed July 27, 2005.) As Elliott explains, the United States Court of Appeals for the Third Circuit had held "that under Virgin Islands law a two-year statute of limitations applies with respect to asbestos claims, running from when a plaintiff knew or had reason to know of an asbestos-related illness." *Id.* at 10 (discussing *Joseph*). At the time when HOVIC settled with the District Court Plaintiffs, and when it filed this case, that precedent was settled law. It remains settled law insofar as *Joseph* applied the discovery rule to asbestos claims. *See Joseph*, 867 F.2d at 182 n.8 ("'In the asbestos litigation context, the discovery rule would suspend the statutory period until the plaintiff knows, or reasonably should know: (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct.'" (citation omitted)). The discovery rule continues to apply in the Virgin Islands. *See Pichierri v. Crowley*, 59 V.I. 973, 978 (2013) (citing *Joseph*, 867 F.2d at 182); *see also United Corp.*, 64 V.I. at 305-06. As the party opposing summary judgment, HOVIC had the burden to support its claims with more than its own *ipse dixit*. It was a real party in interest because it was a real party in interest. That is not enough. HOVIC did not submit an affidavit, for example, attesting that the District Court Plaintiffs were planning to file suit against HOVIC in the Territorial Court and, to preclude that from happening, HOVIC settled with them, even though HOVIC was not named as a defendant. HOVIC likewise did not submit an affidavit from the any of the defendants in the District Court cases (including its parent company) representing that it or they intended to file a complaint for contribution or indemnification against HOVIC in the Territorial Court or in another federal district court. Lastly, HOVIC did not request leave to conduct discovery in response to Elliott's motion. *Cf.* Fed. R. Civ. P. 56(f); *see Rivera-Mercado v. Gen. Motors Corp.*, 51 V.I. 307, 311 (2009) (noting that "a trial court typically grants a Rule 56(f) continuance 'as a matter of course'" (citation omitted)). In short, HOVIC failed to carry its burden of proof. Accordingly, the Court must grant summary judgment to CBI Services, PITGI, John Crane, Alltite, Tuthill, and Born Inc. insofar as HOVIC—and not HOVIC on behalf of Hess—asserted its own claims for contribution and common law indemnification. HOVIC had no potential exposure by 2003 when it settled with everyone except the *Carrion* and the *Morgan* Plaintiffs. Otherwise, Elliott's motion for partial summary judgment on Counts I and II as to Hess must be denied.

### C. *Untimely Filed Motion*

¶36   Strahman Valves also moves for summary judgment and asserts the same arguments as Elliott, namely that HOVIC was not named as a defendant in the District Court cases and, therefore, settlement with everyone but the *Carrion* and *Morgan* Plaintiffs was, essentially, gratuitous because HOVIC could not have been sued by anyone who filed suit in 1997, 1998, or 1999. Therefore, the Court should grant summary judgment on Counts I and II, contribution and common law indemnification. But Strahman Valves argues further that the Court should also grant summary judgment on the same counts but as to the *Carrion* and *Morgan* Plaintiffs as well. Strahman Valves asserts that the Settlement Agreement and the release the District Court Plaintiffs signed, which were produced in discovery in the *Manbodh* litigation, show that HOVIC failed to extinguish anyone else's potential liability. In support Strahman Valves attached a copy of the Settlement Agreement and the release signed by Mr. and Mrs. Abraham. However, Strahman Valves' motion cannot be considered and must be stricken.

¶37   Strahman Valves filed its motion on January 11, 2012—almost seven years after HOVIC commenced this action. HOVIC filed proof of service on August 22, 2005, showing that Strahman Valves was served on June 13, 2005 through Richard Strahman at 3 Vreeland Road, Florham Park, New Jersey by certified mail, return-receipt requested. Strahman Valves did not appear or answer HOVIC's complaint. HOVIC did not move for entry of Strahman Valves' default. But then, on January 11, 2012, Strahman Valves filed the instant motion without explaining or moving to excuse the delay.

¶38   In *Martinez v. Columbian Emeralds, Inc.*, 51 V.I. 174, 191 (2009), the Supreme Court of the Virgin Islands reversed a Superior Court decision granting a defendant's untimely motion to dismiss for failure to state a claim for relief. The defendant had stipulated with the plaintiff for an extension of time to plead. *See id.* at 189-90. After the agreed extension passed, the defendant filed a motion for additional time, which the trial court denied because the defendant failed to show excusable neglect. *See id.* at 190. As the Virgin Islands Supreme Court explained, "[a]t that posture of the case, absent the granting of a proper motion by [the defendant] to plead out of time filed with the requisite showing of excusable neglect, no further pleading was permitted . . . and, consequently, the filing of a pre-answer motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) was not

permitted." *Id.* The Court reiterated that "[t]he motion to dismiss was . . . not properly before the trial court and should not have been considered. The trial court should have considered [the plaintiff's] motion to strike the motion to dismiss and its motion for entry of . . . default before considering . . . [the defendant's] Rule 12(b) motion." *Id.* at 191.

¶39    The Virgin Islands Supreme Court reaffirmed *Martinez* ten years later in *Montgomery v. Virgin Grand Villas St. John Owners' Association*, 2019 VI 27. In that case, the defendant, Virgin Grand, had filed a motion for summary judgment approximately a year after the motion deadline had passed, *see id.* at ¶ 21, "without requesting leave to file the motion out of time or otherwise attempting to establish good cause or excusable neglect for the late filing." *Id.* ("Thus, rather than consider the motion on the merits, the Superior Court should have denied the motion as untimely."). The Supreme Court vacated the Superior Court's decision on the untimely motion and remanded for the court "to proceed to trial." *Id.*

¶40    Binding precedent is clear. Strahman Valves' motion is not properly before the Court and cannot be considered. Strahman Valves did not explain the seven year delay between service of process and the filing of its summary judgment motion. Although no scheduling order is in place as yet, Superior Court Rule 32(a), which was in effect at the time, provided that "[t]he defendant may defend by entering his appearance before the clerk or by filing an answer with the clerk within 20 days after service of the summons and complaint." That deadline may have stretched to 30 days since Strahman Valves was served outside the Territory. *See* 5 V.I.C. § 112(d); *see also Edwards v. Hess Oil V.I. Corp.*, 69 V.I. 136, 141-42 (Super. Ct. 2017) (quoting Superior Court standard summons). But it cannot stretch to seven years. Strahman Valves had to file a motion and show good cause to excuse that delay. It did not. Therefore, its summary judgment motion is untimely and must be stricken.

### D. *Failure to Obtain Insurance*

¶41    PITGI, CBI Services, and 3M move to dismiss Count IV, breach of contract for failure to obtain insurance. They claim the statute of limitations has run. They note that, even though HOVIC did not allege a specific date within Count IV, HOVIC incorporated its allegations from Counts I through III into Count IV. And Count III alleged that "[f]rom 1965 through June 10, 1982, and from November 29, 1984 to October 30, 1998, HOVIC purchase orders contained . . . indemnification language[.]"

(Compl. 12, ¶ 5.) CBI Services and PITGI note that HOVIC's allegations arise out of "innumerable alleged contracts purportedly evidenced by unspecified purchase orders." (Def. PITGI's Stmt of Undisputed Facts & Mem. of Law in Supp. of Mot. to Dismiss 16, filed Aug. 31, 2005 (hereinafter "PITGI/CBI Mot."[12]).) "Thus, logic dictates," they argue, "that any insurance would have to be procured, or a rider naming HOVIC as an additional insured obtained, prior to or at the time of the particular shipment in question." *Id.* "[T]he last possible date for breach of contract was October 30, 1998. Clearly the statute of limitations for HOVIC to bring any claims under Count Four expired before HOVIC filed its Complaint . . . ." *Id.* at 17. And CBI Services and PITGI contend that "a breach of the duty to insure occurs at the time the responsible party fails to obtain said insurance." (PITGI/CBI Mot. 16-17 (citing *Premium Cigars Int'l, Ltd v. Farmer-Butler-Leavitt Ins. Agency*, 96 P.3d 555, 569-70 (Ariz. Ct. App. 2004); *Sloniger v Niagara Mohawk Power Corp.*, 761 N.Y.S.2d 757, 758 (App. Div. 2003)).) 3M agrees: "'a cause of action based on breach of an agreement to procure insurance coverage accrues at the time that the contracting party failed to procure insurance.'" (3M Mot. 5 (brackets and ellipsis omitted) (quoting *Polat v. Fifty CPW Tenants Corp.*, 672 N.Y.S.2d 56, 57-58 (App. Div. 1998)).

¶42    HOVIC counters that "[c]ourts in other jurisdictions have recognized the unfairness of mechanically applying a[n] accrual-at-breach rule and have instead applied a[n] accrual-at-discovery of breach rule to determine the accrual date for breach of contracts to procure insurance claims." (Pl.'s Opp'n to 3M's Mot. to Dismiss Pl.'s Compl. 4, filed Sept. 2, 2005 (citing *TIG Ins. Co. v. Via Net*, 178 S.W.3d (Tex. Ct. App. 2005); *Gudenau & Co., Inc. v. Sweeney Ins., Inc.*, 736 P.2d 763 (Alaska 1987)) (hereinafter "3M Opp'n").) HOVIC also counters that its complaint was timely-filed because "[t]he duty to defend is not triggered when parties enter a purchase order agreement. Rather, the duty to defend arises when a party is made aware of its contractual obligation based upon the date when a claim was made." (PITGI/CBI Opp'n 16 (citing *Tyson v. Litwin Panamerican Corp.*, 22 V.I. 168 (D.V.I. 1986)).

¶43    In general, breach of contract claims are subject to a six-year limitation period. *See* 5 V.I.C. § 31(3)(A) ("An action upon a contract or liability, express or implied . . . ."). But during the March 19,

---

[12] The motions filed by CBI Services and PITGI are in large part identical, with the same exhibits, and were filed by the same attorney on the same day. Citations to one motion are interchangeable with and applicable to the other.

2020 hearing, CBI Services and PITGI argued that the four-year limitation period in the Virgin Islands' Uniform Commercial Code ("VIUCC") applies since the agreement to obtain insurance was contained within purchase orders for the sale of goods. *See* 11A V.I.C. § 2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."). So, the question is which limitation period applies. But regardless of whether the four-year statute of limitations applies—because the agreement to obtain insurance is contained within a purchase order for the sale of goods—or the six-year statute of limitation applies—because the agreement is separate from the goods purchased—both limitation periods have passed long before 2005, when HOVIC filed this case, unless the claim does not accrue until the failure to obtain insurance is discovered. The Defendants may be correct: "[T]he last possible date for breach of contract was October 30, 1998." (PITGI/CBI Mot. 17.) And that date would be earlier if the four-year statute of limitation under the VIUCC applies. HOVIC counters that the discovery rule should apply. (*See* 3M Opp'n 4 ("Here, HOVIC did not discover 3M's breach until it made its claim.").)

¶44    The Supreme Court of the Virgin Islands has not addressed whether the discovery rule applies to contract claims. And "when the Virgin Islands Supreme Court has not spoken," courts must "employ[] a *Banks* analysis to determine Virgin Islands common law . . . ." *Alleyne v. Diageo USVI, Inc.*, 63 V.I. 384, 405 n.6 (Super. Ct. 2015) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011)). A *Banks* analysis requires "consider[ing] three non-dispositive factors to determine Virgin Islands common law: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands.'" *Id.* (quoting *Gov't of the V.I. v. Connor*, 60 V.I. 597, 600 (2014) (*per curiam*)).

¶45    Regarding the first factor, the majority of Virgin Islands courts have rejected applying the discovery rule to contract claims. First, if the VIUCC applies, the Court may be prohibited from applying the discovery rule because the VIUCC provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." 11A V.I.C. § 2-725(2). Based on this language, Virgin Islands courts have concluded that the discovery rule does not apply to breach of contract claims arising out of the sale of goods. *See Gerald v. R.J. Reynolds Tobacco Co.*, 67 V.I. 441, 462 (Super. Ct. 2017) ("[T]he discovery rule cannot be used to toll the four-

year statute of limitations under 11A V.I.C. § 2-725(4).")); *Fombrun v. Controlled Concrete Prods.*, 21 V.I. 578, 582-83 (Terr. Ct. 1985) (same); *see also MRL Development I, LLC v. Whitecap Investment Corp.*, 64 V.I. 724, 738 (3d Cir. 2016) ("[W]e find that the discovery rule does not apply to contract claims covered by the Virgin Islands U.C.C."). One Superior Court judge assumed, without deciding, that the discovery rule could apply to contract claims. *See United Corp. v. Hamed*, Case No. ST-13-CV-101, 2014 V.I. LEXIS 132, *8-9 (V.I. Super. Ct. Sept. 2, 2014), *rev'd on other grounds and remanded*, 64 V.I. 297. And another Superior Court judge concluded, based on the reversal in *Hamed*, that the discovery rule does apply to contract claims because contract claims were at issue in *Hamed*. *See Tutu Park, Ltd. v. Harthman Leasing I, LLLP*, Case No. ST-14-CV-456, 2016 V.I. LEXIS 159, *23 (V.I. Super. Ct. Sept. 27, 2016) (discussing *Hamed* and noting that the Supreme Court had observed that "whether the discovery rule tolled the statute of limitations on the plaintiff[']s claims (which included a breach of contract claim) depended heavily on factual development of the record and necessarily was not fit for disposition on the pleadings."). *See also, e.g., Charleswell v. Chase Manhattan Bank, N.A.*, Civil No. 01-119, 2009 U.S. Dist. LEXIS 54519, *34-37 (D.V.I. June 22, 2009) (applying discovery rule to breach of insurance contract). The Virgin Islands Supreme Court has noted that the discovery rule could apply to contract claims. *Anthony v. FirstBank V.I.*, 58 V.I. 224, 230 n.8 (2013). But the question was not addressed because the issue was waived. *See id.*

¶46    Regarding the second factor, "jurisdictions are divided on extending the discovery rule to contract claims. Many retain the general rule that the statute of limitations starts to run at the time of the breach, and that the plaintiff's ignorance as to the existence of a cause of action is irrelevant." *Bauman v. Day*, 892 P.2d 817, 827 (Alaska 1995) (collecting cases); *accord Peck v. Donovan*, 565 F. App'x 66, 70 (3d Cir. 2012) (applying New Jersey law); *see also Penn v. 1st S. Ins. Servs., Inc.*, 324 F. Supp. 3d 703, 709 (E.D. Va. 2018) (applying Virginia law) ("[N]umerous courts have taken the view that an action for failure to procure insurance accrues when a breach of the duty to procure insurance occurs, such as when a defective policy is placed, not when a payout under the intended policy would have vested."). In fact, one case HOVIC relied on, *TIG Insurance Company*, was reversed on this very point of law. *See TIG Ins. Co.*, 178 S.W.3d at 17 (assuming without deciding that discovery rule applies to contact claims), *reversed by Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 315 (Tex. 2006) (*per curiam*) ("Some contract breaches may be inherently undiscoverable and

objectively verifiable. But those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims."). *Via Net* involved a claim for breach of contract for failure to name as an additional insured. "In June 1997, a Via Net employee named Guy Wright was injured when Safety Lights' employees allegedly dropped a 3000-pound steel plate on his hand. He sued three weeks later . . . ." *Via Net*, 211 S.W.3d at 312. Via Net was a vendor of Safety Lights. *See id.* Safety Lights had taken the position the year before that "that it would no longer buy from [its vendors] . . . unless it was added as an additional insured under their commercial general liability policies." *Id.* Via Net agreed, and Safety Lights received "a certificate of insurance in February 1997 listing Safety Lights as 'holder' and stating that 'holder is added as additional insured re: General Liability.'" *Id.* But the certificate included a disclaimer that no rights were conferred by it and, in fact, "Via Net's policy with Lumbermens Mutual Casualty Company did not provide for additional-insured coverage, and no endorsement adding [Safety Lights] . . . as an additional insured was ever issued." *Id.* When Safety Lights tendered the defense of the *Wright* lawsuit to Via Net, the insurance company, Lumbermens, denied the request. Safety Lights settled with Wright and then sued in federal court for breach of contract and misrepresentation, which was dismissed because the insurance policy did not provide for additional coverage. *See id.* at 312 (citing *TIG Ins. Co. v. Sedgwick James of Washington*, 184 F. Supp. 2d 591, 598, 604 (S.D. Tex. 2001)). Safety Lights then sued Via Net and Lumbermens in state court for breach of contract for failure to name it as an additional insured. The trial court granted summary judgment on statute of limitations grounds. "The court of appeals reversed, finding the discovery rule could defer accrual until Safety Lights received Lumbermens' denial . . . ." *Id.*

¶47    On appeal, the Supreme Court of Texas reversed the Court of Appeals for the First District of Texas. The Texas Supreme Court acknowledged that the accrual of some causes of action "may be deferred if 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Id.* at 313 (citation omitted). But the court also acknowledged that "'[i]t is well-settled law that a breach of contract claim accrues when the contract is breached.'" *Id.* at 314 (citation omitted). And "[c]ontracting parties are generally not fiduciaries. Thus, due diligence requires that each protect its own interests." *Id.* (citation omitted). In that context, "[d]ue diligence may include asking a contract partner for information needed to verify contractual performance,"

the court reasoned, and "[i]f a contracting party responds to such a request with false information, accrual may be delayed for fraudulent concealment." *Id.* (citations omitted). But failing to even ask for such information is not due diligence." *Id.*

¶48    Other courts generally agree. Illinois, for example, "treats negligent failure to procure insurance as a tort arising out of a contract, [thus,] 'the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages.'" *Am. Fam. Mut. Ins. Co. v. Krop*, 120 N.E.3d 982, 991 (Ill. 2018). Another case HOVIC relies on, *J.J. Gumberg Company v. Janis Services, Inc.*, 847 So.2d 1048 (Fla. Ct. App. 2003) (*per curiam*), actually rejects applying the discovery rule. In that case, the Court of Appeal of Florida explained that a breach of contract claim requires "'(1) a valid contract; (2) a material breach; and (3) damages.'" *Id.* at 1049 (citation omitted). Gumberg had entered into a contract with Janis to remodel a food court at a mall. *See id.* An employee of Janis was injured and sued Gumberg in 1994; Gumberg filed a third-party complaint against Janis for contribution, contractual and common law indemnification. The contribution and common law indemnification claims were dismissed, leaving only the contractual indemnification claim. Gumberg settled with the employee in 2001, and moved to amend its third-party complaint to add, *inter alia*, a claim against Janis for breach of contract for failure to obtain insurance. *See id.* The trial court denied the motion to amend. Gumberg then filed a new case against Janis and Janis' insurance company. Seven years had passed since the employee was injured in 1994. The trial court dismissed the new complaint finding that the statute of limitations had run. The appellate court affirmed in part, agreeing that even if "Janis breached the contract by failing to obtain liability insurance . . . at the time Green was injured in June of 1994, all the elements for a cause of action for breach of contract existed." *Id.* at 1050.

¶49    But not all courts reject the discovery rule for contract claims. As the Supreme Court of Tennessee explained:

> Courts in other jurisdictions are split on whether the discovery rule can apply in breach-of-contract actions. Some decline to apply the discovery rule to breach-of-contract actions under any circumstances. Others take the opposite approach, applying the general discovery rule in breach-of-contract cases in the same way it is applied in torts and other types of actions. Still other courts take a third path; they apply the discovery rule in breach-of-contract cases only in situations where the breach is "inherently undiscoverable," "inherently unknowable," or "difficult to detect." Even in those cases, there is no uniform description of the terms.

*Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 711-12 (Tenn. 2019) (footnotes omitted). Although the Tennessee Supreme Court noted that it had not weighed in on the question, *see id.* at 711, the court nonetheless declined to apply the discovery rule on the facts presented. "The breach at issue arises from a commercial contract between two sophisticated business entities, each expected to use due diligence to protect its own interests. 'Due diligence may include asking a contract partner for information needed to verify contractual performance.'" *Id.* at 714 (quoting *Via Net*, 211 S.W.3d at 314)).

¶50 Alaska applies the discovery rule to contract claims. *See Gudenau & Co., Inc.*, 736 P.2d at 766-68. So does South Carolina, *see Maher v. Tiete Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998) ("Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence."), and Arizona. *See Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 968 (Ariz. 1995) ("In any event, we believe that Division Two properly applied the discovery rule to the breach of contract claims in *Matusik* and *HSL Linda Gardens*, and to the extent that *Cecil Lawter* suggests that the discovery rule cannot apply in breach of contract actions, we disapprove it."). As the Supreme Court of Arizona explained, "the important inquiry in applying the discovery rule is whether the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect, not whether the action sounds in contract or in tort." *Id.*

¶51 Clearly, jurisdictions are divided. Having considered the different approaches, this Court holds that the discovery rule applies to contract claims. The Virgin Islands Supreme Court has acknowledged that "the statute of limitations on a cause of action begins to run from the date the cause of action accrued, which ordinarily is the date upon 'occurrence of the essential facts that give rise to that cause of action.'" *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 594 n.19 (2015) (quoting *Anthony v. FirstBank V.I.*, 58 V.I. 224, 230 (2013)). And the Court cited persuasive precedent from other jurisdictions recognizing that contract claims do not accrue until there is a refusal to pay. *See id.* (collecting cases). This Court believes that the Supreme Court would follow Arizona and recognize that the inquiry is not whether the action sounds in tort of contract.

¶52     That said, "[c]ontracting parties are generally not fiduciaries ... [and] due diligence requires that each protect its own interests." *Via Net*, 178 S.W.3d at 314 (citations omitted). And once "customers have the opportunity to read their insurance policy and can reasonably be expected to understand its terms, the cause of action for negligent failure to procure insurance accrues as soon as the customers receive the policy." *Krop*, 120 N.E.3d at 984 Here, HOVIC (or Hess if Hess is the real party in interest) was the insured. "'Under the discovery rule, the focus is not on the plaintiff's actual knowledge, but rather whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff.'" *United Corp.*, 64 V.I. at 305 (citation omitted). Even when the discovery rule is applied, HOVIC (or Hess) could have determined at some point "[f]rom 1965 through June 10, 1982, and from November 29, 1984 to October 30, 1998," (Compl. 12, ¶ 5), that CBI Services, PITGI, 3M, Tuthill, Born Inc., Elliott, and Raritan did not provide the certificates of insurance they purportedly agreed to by accepting HOVIC's purchase order.

¶53     An agreement to procure insurance is a contract. *See Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co.*, 629 So. 2d 633, 639 (Ala. 1993) ("A contractual obligation to indemnify is distinct from a contractual obligation to procure insurance."); *Kinney v. G. W. Lisk Co.*, 556 N.E.2d 1090, 1092 (N.Y. 1990) ("An agreement to procure insurance is *not* an agreement to indemnify or hold harmless, and the distinction between the two is well recognized."); *Boise Cascade Corp. v. Main-Erbauer, Inc.*, 620 A.2d 280, 281-82 (Me. 1993) ("'An agreement to obtain insurance is not an agreement of insurance; a person promising to obtain insurance does not by that promise become an insurer although he may assume the liabilities of one if he breaches the agreement.'" (quoting *Zettel v. Paschen Contractors, Inc.*, 427 N.E.2d 189, 191 (Ill. App. Ct. 1981)); *see also Audubon Indem. Co. v. Custom Site-Prep, Inc.*, 358 S.W.3d 309, 321 (Tex. App. 2011) (reversing summary judgment on breach of contract claim for failure to obtain insurance). "A failure by the promisor to procure insurance for the benefit of the promisee, pursuant to an insurance procurement provision, constitutes a breach of contract by the promisor." *Roffi v. Metro.-North Commuter R.R.*, 98 Civ. 8713 (THK), 2001 U.S. Dist. LEXIS 20265,*24 (S.D.N.Y. Dec. 5, 2001). Thus, the Court finds that the six-year statute of limitations applies here.[13]

---

[13] The question which statute of limitations applies is generally a question of law. *Cf. Steadfast Ins. Co. v. Greenwich Ins. Co.*, 922 N.W.2d 71, 77 (Wis. 2019) ("Determining which statute of limitations applies to contract issues involves a question of law . . . ."); *accord Smith v. State*, 282 P.3d 300, 303 (Alaska 2012) ("'A trial court's determination about

¶54   Assuming the truth of HOVIC's allegations, as the Court must on a motion to dismiss, CBI Services, PITGI, and 3M (as well as Tuthill, Born Inc., Elliott, and Raritan who joined the motions) agreed to "furnish Certificates of Insurance" "[f]rom 1965 through June 10, 1982, and from November 29, 1984 to October 30, 1998 . . . ." (Compl. p. 12-13, ¶ 5; *see id.* at 15, ¶ 1.) Taking HOVIC's allegations as true: CBI Services, PITGI, 3M, Tuthill, Born Inc., Elliott, and Raritan all breached their agreement to obtain insurance. But even when applying the discovery rule, and even when viewing the facts in the light most favorable to the plaintiffs, the Court must also find that HOVIC (or Hess) knew or should have known within six years after July 1, 1997, when the first District Court lawsuit, *Andrew, et al. v. Amerada Hess Corporation, et al.,* was filed, or by July 1, 2003, that 3M, PITGI, and CBI Services had failed to procure insurance. The Court cannot agree with HOVIC that the accrual date on a claim for breach of an agreement to obtain insurance begins when the underlying claims are settled. That conclusion would obliterate the statute of limitations. In fact, a strong argument could be made that HOVIC knew or should have known within six years after each purchase order

---

which statute of limitations applies is a question of law.'" (citation omitted)). *But cf. Syed v. Hercules Inc.,* 214 F.3d 155, 159 n.2 (3d Cir. 2000) ("We exercise plenary review over the District Court's choice of the applicable statute of limitations."). But failure to raise the statute of limitations, which is an affirmative defense, at the earliest opportunity results in waiver. *Rennie v. Hess Oil V.I. Corp.,* 62 V.I. 529, 536 (2015) ("[I]t is well established that the statute of limitations is an affirmative defense that must be specifically pleaded at the first opportunity or else is waived." (collecting authorities). The Defendants did not raise the VIUCC four-year statute of limitations until the March 19, 2020 hearing. (*See* PITGI/CBI Mot. 7 (citing 5 V.I.C. § 31(3)(A)); *see* 3M Mot. 3 (same).) This constitutes wavier. Moreover, whether an indemnification clause within a purchase order for goods should be considered separate from or incorporated into a sales contract is unanswered in the case law. *Cf. Titanieum Metals Corp. v. Elkem Mgmt,* 87 F. Supp. 2d 429, 431 (W.D. Pa. 1998) ("The question, then, is whether the tender of delivery rule applicable generally in UCC actions applies to this claim for indemnity. There is a split of authority on this issue . . . ." (footnote omitted)). Some courts note that indemnification is separate from the goods sold. *See id.* at 431-32; *see also Travelers Indem. Co. v. Dammann & Co.,* 592 F. Supp. 2d 752, 767 (D.N.J. 2008). Others assumed, without deciding, that the UCC four-year statute of limitations applies. *Cf. Mullinax v. Bepex Corp.,* Nos. 89-2029, 89-2158, 1990 U.S. App. LEXIS, *1 n.1 (4th Cir. Nov. 9, 1990) (*per curiam*) ("We assume, without deciding, that the contract should be deemed to include the indemnification clause. Stouffer argues that under UCC 2-207 the indemnification clause was never part of the sales contract. Given our disposition of the case, we find it unnecessary to decide this question."). Resolving the question whether the four-year UCC statute of limitations would apply or the general six-year statute of limitations is further complicated here because HOVIC is not only suing for contractual indemnification but also for breach of the agreement to obtain insurance to cover the potential need for indemnification. Although the Defendants timely raised the statute of limitations, they asserted that the six-year statute of limitations governed. Waiting approximately fifteen years to raise the four-year VIUCC statute of limitations constitutes waiver. Moreover, HOVIC, in its complaint, alleges (without specification, however) that the Defendants "sold, marketed, distributed, installed, serviced and/or maintained asbestos-containing products at the HOVIC refinery on St. Croix." (Compl. p.12, ¶2(b).) Sales contracts would be covered by the VIUCC, but services contracts might not. *Cf. Gulash v. Stylarama, Inc.,* 364 A.2d 1221, 1223 (Conn. Super. Ct. 1975) ("It is clear that where the contract is basically one for the rendition of services, and the materials are only incidental to the main purpose of the agreement, the contract is not one for the sale of goods under the UCC."). Again, which statute of limitations applies, and why, was for the Defendants to argue.

was issued and accepted that it never received the certificates of insurance that its suppliers had agreed to provide. *Accord Penn*, 324 F. Supp. 3d at 711 ("[A] claim accrues in the failure to procure insurance setting when a fixed violation of the duty to obtain insurance occurs, such as when a deficient insurance policy is issued. That is because only a slight injury as a result of the breach is necessary to trigger accrual.").

¶55    Again, taking HOVIC's allegations as true, the purchase orders between CBI Services, PITGI, 3M, Tuthill, Born Inc., Elliott, and Raritan and HOVIC (or Hess) were contracts. CBI Services, PITGI, 3M, Tuthill, Born Inc., Elliott, and Raritan "expressly agreed to obtain insurance in support of their agreement to indemnify, hold harmless and defend HOVIC . . . ." (Compl. p. 16, ¶ 2.) CBI Services, PITGI, 3M, Tuthill, Born Inc., Elliott, and Raritan breached this agreements. But the statute of limitations has run on claims for failure to obtain insurance arising out of the *Andrew, Crichlow, Abraham, Johnhope, Moreta, Felix, Frederick, Smith, Jacob, Moore, Williams, Caminero,* and *Cabreja* lawsuits. Assuming HOVIC's claim arose on the date each lawsuit was filed, then HOVIC should have known within six years thereafter that CBI Services, PITGI, 3M, Tuthill, Born Inc., Elliott, and Raritan had failed to obtain insurance. Raritan and 3M were Hess' co-defendants in every District Court case. This is an instance where the complaint (and the documents incorporated by reference) "'so clearly reveals the existence of a defense that judgment on the pleadings is possible[.]'" *United Corp.,* 64 V.I. at 306 (citation omitted). As for the other District Court cases, the Court cannot conclude that the statute of limitations has run because those cases, *Caraballo,* and *Carrion* and *Morgan,* were filed in 1999 and 2001, respectively, and six years had not passed by March 29, 2005, the date when HOVIC filed its complaint.

¶56    However, since discovery has been stayed, and since HOVIC's claims must be severed as explained below, the Court finds that the most just, speedy, and inexpensive way to proceed at this point is grant the motions in part but stay the dismissal of Count IV and certify by separate order the following questions of law to the Supreme Court of the Virgin Islands: (1) does the discovery rule apply to contract claims, and (2) when does a breach of contract claim for failure to obtain insurance accrue? As the case law demonstrates, there are reasonable grounds for a difference of opinion on these questions. And the questions are controlling. If the Supreme Court concludes generally that contract claims are not subject to the discovery rule or that a claim for breach of an

agreement to obtain insurance in particular accrues within the statute of limitations, then Count IV may have to be dismissed outright for all District Court cases and not just in part. Moreover, resolution of these questions may materially advance the ultimate termination of this litigation as well as other litigation. *Cf. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[I]n exercising our discretion under the statute, we may properly consider the system-wide costs and benefits of allowing the appeal. In other words, the impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court.").

### E. *Contribution / Indemnification as to all District Court Cases*

¶57   CBI Services and PITGI also move to dismiss HOVIC's claims for contribution (Count I), common law indemnification (Count II), and contractual indemnification (Count III). In support, they attached copies of the Settlement Agreement and Mr. and Mrs. Abraham's release. They argue that HOVIC failed to discharge their potential liability and therefore the right to seek contribution or indemnification does not exist. (*See* PITGI/CBI Mot. 5 ("'The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability.'" (ellipsis omitted) (quoting Restatement (Second) of Torts § 886A(2) (1979)); *see id.* at 6 ("The same equitable principle applies to HOVIC's claims for common law indemnification . . . ."). John Crane, Tuthill, Alltite, and Born Inc. joined the motions filed by CBI Services and PITGI.

¶58   To the extent the motions relate to HOVIC's claims, rather than Hess' claims, the Court's discussion above concerning Elliott's motion resolves CBI Services' and PITIG's motions, except for the *Carrion* and *Morgan* Plaintiffs. Regarding contribution and common law indemnification as to the *Carrion* and *Morgan* Plaintiffs, to determine whether HOVIC (or Hess) did or did not extinguish anyone's liability, the Court would have to look outside the pleadings to make that determination. Based on the documents CBI Services and PITGI attached, the Court would also have to convert their motions to motions for summary judgment. *See* V.I. R. Civ. P. 12(d). CBI Services and PITGI disagree. (*Cf.* PITGI/CBI Mot. 8 ("This Court may rely upon the settlement agreement and release attached hereto to determine the instant motion without converting [it] to a motion for summary judgment."

(bold font omitted)).) Although the Court concluded above that HOVIC had incorporated the District Court cases into its complaint by reference, and therefore the Defendants could refer the Court to the complaints the District Court Plaintiffs filed to show that HOVIC was not named, and even though HOVIC did reference the Settlement Agreement and the releases with the District Court Plaintiffs in its complaint, the Court cannot find here that HOVIC further incorporated the terms of approximately 150 different releases executed by the District Court Plaintiffs into its complaint. The incorporation-by-reference doctrine does not extend that far. Moreover, CBI Services and PITGI only attached the release signed by Oliver and Alexandrine Abraham. The Court cannot assume that the release all other District Court Plaintiffs signed was identical. Thus, the Court finds that it would have to convert the motion to one for summary judgment. And, in this instance, the Court cannot find that HOVIC (or Hess) had notice. *Cf. Stanley*, 2020 VI Super 47 at ¶¶ 15-16. Therefore, the motions must be denied as to Counts I and II as to the *Carrion* and *Morgan* Plaintiffs as to HOVIC. And the motion must be denied without prejudice as to Hess. *See* V.I. R. Civ. P. 17(a)(2).

¶59    Regarding contractual indemnification, CBI Services and PITGI argue that the Court should also dismiss Count III because HOVIC failed to plead all the essential elements of a breach of contract claim (*See* PITGI/CBI Mot. 12 ("First, HOVIC does not allege the existence of any particular contract .... Rather, HOVIC contends that over a period of 33 years, it and PITGI, among the other numerous named defendants, must have entered into innumerable and undefined shipping/transfer agreements based on HOVIC's usual business practices.").) Further, since HOVIC was not named as a defendant in the District Court cases, CBI Services and PITGI contend that HOVIC fails to state a claim for breach of the duty to defend. But rather than argue that HOVIC did not have to defend the District Court cases because it was not named as a defendant, PITGI and CBI Services instead argue that the statute of limitations has run. They contrast language HOVIC included in its complaint from its standard purchase orders, namely the language in effect from 1965 through June 10, 1982 and November 29, 1984 through October 30, 1998, from language in effect between June 10, 1982 and November 29, 1984, and assert that the duty to defend, if any, "could only have existed from June 10, 1982 until November 29, 1984." *Id.* at 14. CBI Services' and PITGI's arguments are rejected.

¶60    "In ruling on a motion to dismiss for failure to state a claim for relief, courts 'assume all reasonable factual allegations in the complaint as true and draw all fair inferences from such

allegations.'" *Arno v. Hess Corp.*, 2019 VI Super 140, ¶ 37 (quoting *In re: Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 375, 380 (Super. Ct. 2006)). "The basic purpose of a motion to dismiss is to test the legal sufficiency of the complaint to state an actionable claim, not to test the truth of the facts alleged in the complaint." *Id.* (ellipsis and citation omitted). HOVIC clearly stated a breach of contract claim. In its complaint, HOVIC alleges that its "purchase orders were valid and binding contract to which the defendants were parties." (Compl. p. 12, ¶ 4.) HOVIC further alleges that its purchase orders "contained . . . indemnification language[.]" *Id.* ¶ 5. Although CBI Services and PITIG are correct, the word "defend" only appears in the language HOVIC claims was in effect from 1982 to 1984, the Court cannot resolve this dispute on a pre-answer motion to dismiss. The language in effect during all other times relevant here included a duty to indemnify. Some courts have observed that the duty to indemnify implies a duty to defend. *Cf. Hennessy v. Robinson*, 985 F. Supp. 283, 287 (N.D.N.Y. 1997) ("[T]his Resolution provides for indemnification which, of course, includes the duty to defend because duty to indemnify includes the duty to defend as well."). Other courts have held that "the duty to defend is broader than the duty to indemnify . . . ." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). If the language of the contract is ambiguous, determining the meaning of the contract becomes a question of fact. *See Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624 (2017). Factual disputes cannot be decided on a pre-answer motion to dismiss for failure to state a claim for relief. CBI Services' and PITGI's motions, as joined by others, must be denied.

### F. *Misjoinder*

¶61 Lastly, John Zink moves to dismiss HOVIC's complaint because "HOVIC should have filed a separate civil complaint in the case of each of the underlying federal court plaintiffs in which HOVIC believes that it is entitled to relief . . . ." (John Zink Mot. 4.) John Zink cites to the directive of the Court (Cabret, P.J.) at a status conference held on May 4, 2005 in *Manbodh* in which "[t]he Court had ruled from the bench that parties wishing to recover the settlement monies should follow the same procedures that were followed in the previous asbestos cases.'" *In re: Kelvin Manbodh Asbestos Litig. Series*, 69 V.I. at 431 (brackets and citation omitted). However, as the Court (Willocks, J.) noted in *Manbodh*, referring to this case:

> the May 4, 2005 hearing was held in *Manbodh*, not in *Fluor* . . . . The clerk did not call
> the *Fluor* case. Counsel for *Fluor* did not appear. Hence, the ruling from the bench may

> not have been an order, strictly-speaking, as to *Fluor*... [A]nd most importantly, *Fluor*
> had already been filed more than a month before the May 4, 2005 hearing occurred.

*Id.* at 431-32 (footnotes omitted). Although "oral orders are enforceable pending reduction to writing," *id.* at 432, "no order issued in *Fluor* to that effect. [And] more importantly, objections had been raised during the May 4, 2005 hearing against having HOVIC . . . file individual complaints." *Id.*

¶62 While John Zink and other Defendants argued that the May 4, 2005 bench ruling is controlling, this Court is not convinced. *But cf. id.* at 432 n.20. Even if it were controlling, the "rul[ing] that parties wishing to recover the settlement monies should follow the same procedures that were followed in the previous asbestos cases," *In re: Kelvin Manbodh Asbestos Lit. Series*, 2005 V.I. LEXIS 40 at *4 n.1, was an interlocutory order. Once this case was reassigned to the undersigned judicial officer by the Presiding Judge, the reassignment brings with it "the discretion to revise any interlocutory order at any time prior to entry of a final judgment." *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 609 (2012) (citation omitted). *See also In re: Estate of George*, 59 V.I. 913, 920-21 (2013) (one judge replaces another when cases are reassigned and may reexamine prior interlocutory orders). Since this Court can "reexamine the prior judge's interlocutory orders," *Estate of George*, 59 V.I. at 920, the Court will modify the May 4, 2005 bench ruling, even if it could be considered a decision rendered in this case.

¶63 There is no question here that John Zink is correct: "complexity and confusion . . . will certainly result from the[] 149 separate claims for relief being presented under a single caption . . . which purports to address the allegations and underlying facts and circumstances in every one of the 149 federal court settlements . . . ." (John Zink Mot. 4.) But dismissal of claims or parties has never been sanctioned in the Virgin Islands for misjoinder. *See Grant v. HOVENSA, LLC*, 70 V.I. 639, 648 (Super. Ct. 2019) ("'The remedy for misjoinder is not dismissal but severance.'" (citation omitted)); *Abednego v. St. Croix Alumina, LLC*, 63 V.I. 153, 193 (Super. Ct. 2015) ("Misjoinder is simply not grounds for dismissal."); *Homer v. Lorillard*, 6 V.I. 558, 575 (Mun. Ct. 1967) ("'Misjoinder of parties is not ground for dismissal of an action.'" (citation omitted)). Instead, the Court must sever the claims to be refiled individually. The District Court Plaintiffs did not sue the same companies. The *Andrew* Plaintiffs and the *Carrion* Plaintiffs both sued Dresser, for example, which HOVIC did not name in this action. By contrast, the *Andrew* Plaintiffs sued Owens-Corning Fiberglass Corporation, but the *Carrion* Plaintiffs did not. And the *Carrion* Plaintiffs sued Mobil Oil Company,

but the *Andrew* Plaintiffs did not. Both sued 3M, Raritan, and Elliott, among others, who were Hess' co-defendants in the District Court cases. Thus, the defenses the Defendants could raise here may differ depending on the underlying case. But, because Hess must be given a chance "to ratify, join, or be substituted into the action," V.I. R. Civ. P 17(a)(2), the complaint does not give the Defendants sufficient notice of what defenses they may have as to Hess. For example, 3M and Raritan may assert that Hess should have crossclaimed against them in the District Court cases. That defense would not be available against HOVIC.

¶64    Moreover, the challenges the Defendants' may assert may change. If Hess substitutes into this action in place of HOVIC, all the arguments the Defendants raised regarding HOVIC's nonparty status in the District Court cases may be rendered moot. By contrast, if Hess joins HOVIC, then the Defendants may be able to renew their challenges to the viability of HOVIC's claims. But none of these issues can be resolved—nor can these cases proceed to trial—with approximately 60,000 claims (double if there really are two plaintiffs here) asserted within a single complaint. HOVIC, either individually, or individually and on behalf of Hess, asserted six claims for relief against approximately forty-four defendants, sixty-eight when their successor capacities are included. Although LMC and the Martin Marietta Defendants were dismissed, which resolved Count VI, that still leaves five counts against more than thirty different companies. Considering that claims of contribution and indemnification concern the underlying cases they arose out of, it just is not possible to proceed with essentially 149 contribution claims and 149 indemnification claims against roughly 35 defendants in the same case. Who was named as a defendant in each District Court case, whether that defendant crossclaimed against any other defendant, and how those claims were resolved are all germane to this case going forward.

¶65    HOVIC claims that it commenced this action "to recover only those settlement monies paid to Asbestos Claimants from defendants collectively." (Compl. ¶5.) But it is not that straightforward.[14] HOVIC (or Hess, or HOVIC and Hess) cannot recover the full amount that they paid to Mr. and Mrs. Abraham from each and every Defendant. Instead, contribution requires proof of each Defendant's possible or potential liability to the injured party. Each Defendant can only be

---

[14] For example, whether HOVIC's complaint also sought to recover monies paid to the wives of the District Court Plaintiff-Workers is unclear. The list of District Court Plaintiffs HOVIC attached to its complaint names only the men.

found liable to that extent and no further. *Cf. Gomes v. Brodhurst*, 394 F.2d 465, 468 (3d Cir. 1967) ("a system which taxes non-settling tort-feasors to the extent of their negligence, and no further, is the more equitable."); *see also id.* at 469-70 (noting that the rule in the Virgin Islands "impos[es] liability upon joint tort-feasors in proportion to their comparative negligence . . . ."). Said another way, contribution requires apportioning each Defendant's potential or possible liability to the District Court Plaintiffs. *Accord* 5 V.I.C. § 1451(d) ("Where recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several but, for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant . . . ."). By contrast, indemnification transfers all of HOVIC's (or Hess' or HOVIC's and Hess') liability. *Cf. EEOC v. M.G. Oil Co.*, 274 F. Supp. 3d 927, 931 (D.S.D. 2017) ("[C]ontribution transfers partial liability while indemnification transfer total liability."); *accord Henthorne v. Legacy Healthcare*, 764 N.E.2d 751, 756 (Ind. Ct. App. 2002) ("'Indemnity requires full reimbursement, and transfers liability from one who has been compelled to pay damages to another who should bear the entire loss[.]'" (quoting 41 Am. Jur. 2d *Indemnity* § 1, at 348 (1995 ed.)). But neither HOVIC nor Hess can transfer their entire liability to each and every Defendant. If they carry their burdens of proof, they may be made whole. But HOVIC and Hess cannot make a profit on backs of the District Court Plaintiffs. What's more, "the 'remedies of contribution and indemnity are mutually exclusive,' with contribution prohibited where a party has a right to indemnity, and vice-versa." *Levy v. HLI Operating Co.*, 924 A.2d 210, 221 (Del. Ch. 2007) (citation omitted). *State Farm Fire & Cas. Co. v. Bush Hog, LLC*, 219 P.3d 1249, 1252 (Mont. 2009) ("Contribution and indemnity differ from each other in that contribution distributes loss among joint tortfeasors by requiring each to pay his or her proportionate share of the negligence that caused the plaintiff's injuries, whereas indemnity shifts the entire loss from the one who has been required to pay it to the one who should bear the loss."). And HOVIC and Hess cannot recover under both common law indemnification and contractual indemnification from the same Defendant. *Cf. Holt v. Walsh Grp.*, 316 F. Supp. 3d 274, 281-82 (D.D.C. 2018) ("[M]any states have held that where an express, written indemnification provision exists, the agreed upon terms of that provision—and not principles of implied or equitable indemnification—control the duties and respective liability of

the contracting parties." (collecting cases)); *accord In re: Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 267, 289 (Super. Ct. 2005) ("A cause of action for contractual indemnification is similar to its common law incarnation, except the former is limited to staying within the realm of rights predefined by a contract."). While HOVIC (and Hess) can plead contribution, common law indemnification, and contractual indemnification in the alternative, they cannot recover on all three claims from each Defendant.

¶66 Under these circumstances, the simplest solution is to sever the claims and order HOVIC to refile individually and pay the accompanying filing fee for each forthcoming complaint. The operative complaint would have to be amended since HOVIC must allege that it is proceeding on behalf of Hess, unless Hess elects to substitute in place of HOVIC. If Hess elects to substitute, then the complaint certainly must be amended. And if Hess and HOVIC are asserting claims here, then that too requires an amendment. "'Even in a notice pleading jurisdiction, a complaint must include a short and plain statement showing that each plaintiff is entitled to the relief demanded.'" *Arno*, 2019 VI Super 140 at ¶ 48 (citation omitted). Additionally, several Defendants have filed for bankruptcy in the fifteen years since this case was filed and may have to be dropped. To streamline this case and avoid further delay, the Court will direct that each forthcoming complaint be limited to claims arising out of or relating to one District Court Plaintiff, name only those companies as defendants whom HOVIC (or Hess) contends would have been liable for that Plaintiffs, and include as an attachment to its complaints, a copy of the complaint filed by that Plaintiff, as amended if relevant. HOVIC (and Hess) may also reassert Count IV, notwithstanding the determination above that it must be dismissed, but only insofar as a petition for permission to appeal is filed with the Supreme Court of the Virgin Islands. The Defendants may attach copies of other pleadings, i.e., crossclaims, counterclaims, etc., to their answers to the forthcoming complaints if such pleadings filed in the District Courts cases would be germane to their defense. The Court will direct the Clerk's Office to open a master case to coordinate the forthcoming cases under the caption *In re: Oliver Abraham Federal Asbestos Litigation Series*.

### III. CONCLUSION

¶67 For the reasons stated above, the motions filed by John Zink and R&G to dismiss based on HOVIC's standing and the Superior Court's subject-matter jurisdiction will be denied. HOVIC asserts

that Hess assigned its rights to HOVIC. Hess must be given an opportunity to join, ratify, or substitute into this action before the complaint can be dismissed. Therefore, all dispositive motions will be denied without prejudice as to Hess. The Court will, however, grant Elliott's motion for summary judgment as to HOVIC because HOVIC failed to carry its burden to show that material facts still remain in dispute regarding HOVIC's claims for contribution and indemnification arising out of the District Court Plaintiffs who filed cases between 1997 and 1999. HOVIC did not have any potential liability in 2003 because the statute of limitations had run by then. The Court will also grant the motion filed by 3M, CBI Services, and PITGI to dismiss HOVIC's claim for failure to obtain insurance claim but will stay the dismissal for ten days to allow for the filing of a petition for permission to appeal certified questions of law to the Supreme Court of the Virgin Islands. All other motions will be denied without prejudice, except that Strahman Valves' motion for summary judgment must be stricken as not being properly before the Court. Lastly, the Court will sever all claims and order HOVIC (individually, on behalf of Hess, or individually and on behalf of Hess) to refile one complaint per District Court Plaintiff. Joining claims for contribution and indemnification, and related contractual claims, arising from a settlement with 149 asbestos plaintiffs in sixteen different lawsuits was improper. Appropriate orders follow.

**Date**: April 8, 2020

ATTEST:
TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk
Dated: _____4/8/2020_____

ROBERT A. MOLLOY
Judge of the Superior Court